Van H. Higgins, Relator, v. The City of Chicago, Respondent.

APPLICATION FOR A MANDAMUS.

Where a street has been ordered to be opened or extended, commissioners for the assessment of damages have been appointed; have made and reported an assessment, which has been accepted and confirmed; a warrant issued for the collection of the amounts assessed for payment of such damages, and such street ordered to be opened; the parties entitled to such damages for property taken, etc., are entitled to a mandamus, to compel the city to proceed to collect and pay over the same.

The city may not be heard to object for reason of any supposed irregularities, or for reasons alone applicable to parties interested; it is concluded by its own confirmation.

Public taxes or special assessments for public improvements may be levied upon the public property of the state, county, or municipal corporations; it is a mere question of policy.

Where there is a special assessment for public improvements upon a person's real estate, a lien is created upon his personalty, from the delivery of the warrant to the collector.

The application, in this case, was as follows:

"Respectfully respresents unto your honors, Van H. Higgins, of the city of Chicago, county of Cook, and State of Illinois, that he was, on the fifteenth day of October, A. D. 1855, together with Bolton F. Strother, who has since sold all his interest to Van H. Higgins, seized in fee, and that he was, long before, and ever since has continued to be, the owner, in fee simple, either in his own right or in connection with said Strother, of the following described premises, to wit: the west half of the east half of lot number four (4), in block number ninety-five (95), school section addition to the city of Chicago, which said lot has been subjected to the proceedings hereinafter named to condemn such property for the purpose of opening over a part of the same a highway or street, being an extension south of La Salle street.

"That the said city of Chicago, on the fifteenth day of October, A. D. 1855, in pursuance of the power conferred upon it by its charter, did, through its common council, order a survey for the extension of La Salle street, from its present terminus at Madison street, south to Jackson street, after which the said common council gave notice of their intention to appropriate and take the land necessary for the extension of the said La Salle street, south from Madison to Jackson street, to the owners of said lands, by publishing said notice for ten days, as required by law, in the corporation newspaper.

"And that said city, through its common council, at the expiration of said notice, did choose, by ballot, three disinterested freeholders, to wit: F. A. Bragg, Thomas Church and William W. Saltonstall, residing in said city, as commissioners

to ascertain and assess the damages and recompense due the owners of such land, respectively; and, at the same time, to determine what persons would be benefited by such improvement, and assess the damages and expenses thereof on the real estate of persons benefitted, in proportion, as nearly as may be, to the benefits resulting to each; which said commissioners were elected by a majority of all the aldermen authorized by law to be elected. Said commissioners were duly sworn as required by law, and, before entering on their duties, did give notice to the persons interested of the time and place of their meeting, for the purpose of viewing the premises and making their assessment, by publishing the same ten days before the time of such meeting, in the corporation newspaper, and did therein and thereafter, in all things, proceed according to law. And said commissioners did thereupon proceed to make their assessment, and did determine and appraise to the owner and owners the value of the real estate appropriated for the improvement, and the injury arising to them respectively as damages, after making due allowance therefrom for any benefit which such owner or owners may respectively derive from such improvement. And said commissioners did in all things fully comply with the law and the charter and ordinances of said city, in regard to said assessments and opening said street; and having ascertained the damages and expenses of such improvement, as aforesaid, the said commissioners did thereupon apportion and assess the same, together with the costs of the proceedings, upon the real estate by them deemed benefitted, in proportion to the benefits resulting thereto from the improvements aforesaid, and did describe the real estate upon which their assessments were made, and when completed, the commissioners did sign and return to the common council, within fourteen days of their appointment, and within the extended time allowed by the common council as authorized by law; and the clerk of the city of Chicago did thereupon give ten days' notice, in the corporation paper, that such assessment had been returned, and that, on a day specified in such notice, said assessment would be confirmed by the common council, unless objections to the same were made by some person interested; and thereupon afterward, at the day specified, no objections having been made, the said assessment was, in all things, affirmed by the common council of said city. Your petitioner avers that there was allowed to your petitioner and Bolton F. Strother (who has since sold out his interest to your orator in the said lot and damages) the sum of seven thousand and two hundred dollars, and that there was assessed against said premises, as benefits, the sum of one thousand dollars, all of which will appear by reference to the assess-

ment roll herewith submitted, and by agreement made part of this application, which assessment roll was duly returned by the said assessors and duly confirmed by the city council.

" Your petitioner further represents that a collector's warrant was duly issued for the collection of said assessment, dated the 17th day of June, A. D. 1856, and duly signed and sealed, and that the collector received and collected of the same nearly thirty thousand dollars, and that over one hundred thousand dollars remain uncollected, and that the city has ever since neglected to collect the balance of said moneys, although the said writ was returnable within thirty days after the date thereof.

"Your petitioner claims that, on the confirmation of said assessment, he became entitled to the moneys assessed to him and B. F. Strother, as the damage to said lot, and says that he is entitled to a writ of mandamus against said city of Chicago, to compel said city to proceed and collect said tax, and pay over to him the moneys to which he is so entitled, by reason of the said proceedings. Wherefore your petitioner prays your Honors to grant a writ of mandamus, under the seal of this court, directed to the proper authorities of the city of Chicago, commanding them forthwith to proceed and collect said assessment, and pay over to your petitioner the amount to which he may be entitled, by virtue of said assessment, and to do and perform all such acts and things in the premises as the case requires, and for such other or further relief as to your Honors may seem meet, and to justice and right may appertain. And as in duty bound will ever pray.

"VAN H. HIGGINS.

"By Thomas Hoyne, his Attorney."

" In the above entitled cause the parties agree that the facts in the foregoing petition are correctly stated, and that the facts set forth in the petition and memorandum thereto annexed, signed by the counsel of both parties, shall be considered by the court the same as if they were returned by the said city of Chicago to an alternative mandamus.

"It is admitted and agreed that the copy of the collector's warrant accompanying this petition shall be examined by the court as a part of the case.

"And it is further agreed that the court, on the hearing of the petition, shall make a final order, or grant a peremptory mandamus, if the case requires it, in the same manner as if an alternative writ of mandamus had issued, and return thereto had been duly made by the said defendant, embodying the same facts. JNO. C. MILLER,

"Attorney for The City of Chicago."

"Memorandum referred to in the petition of Van H. Higgins, in the case of The People ex rel. V. H. Higgins v. The City of Chicago.

"The city allege as a reason for not proceeding to get judgment against the lands assessed that, on the 14th day of February, A. D. 1857, an act was passed by the legislature of Illinois, providing that all sales of property for non-payment of taxes and assessments should be held at the same time with the general sale of property for non-payment of city taxes, in each year; and that no sale can be made of the city property until after the first Tuesday of January, A. D. 1858; and it is agreed that all of the provisions of the new charter shall be considered a part of this case.

"The city allege a further reason, that a tax was illegally assessed upon the court house square, against the county of Cook, for the sum of $7,697.50, and that the legislature had no power to legalize the same, as was done by the legislature in the new charter.

"The city allege as a further reason, that the assessors, in assessing the property benefitted, extended their assessments too far, and embraced property not in fact benefitted so much as assessed, and in some instances, perhaps, not at all benefitted.

"The city allege as a further reason, that the amount of costs assessed was unreasonable and excessive, and that the particular items of expense ought to have been given by the assessors, and that the assessment was illegal for that reason.

"It is hereby agreed that if the said assessment is so illegal that it would be set aside by any court for the above reasons, then the application may be claimed; but if they do not invalidate the assessment, so that it must be set aside, then the court shall award a mandamus according to their discretion."

T. Hoyne, for Relator.

J. C. Miller, for The City.

Scates, C. J.   The facts admitted by the respondent entitles the relator to a peremptory writ of mandamus, for the payment of the balance of damages awarded him, after deduction of the benefits.

Where a street has been ordered to be opened or extended, commissioners for the assessment of damages have been appointed, have made and reported an assessment, which has been accepted and confirmed; a warrant issued for the collection of the amounts assessed for payment of such damages, and such street ordered to be opened; the parties entitled to such damages for property taken, etc., are entitled to have and

collect such damages as of debt, and will be entitled to a mandamus, to compel the respondent to proceed to collect and pay over the same. *The People* v. *The Supervisor of Westchester*, 4 Barb. S. C. R. 76; *The People ex rel. Parrish* v. *The Supervisor of St. Lawrence*, 5 Cow. R. 292; *Johnson* v. *Supervisor of Herkimer Co.*, 19 John. R. 272; *Treat et al.* v. *The Inhabitants of Middletown*, 8 Conn. R. 243.

The supposed irregularities in the proceedings of the commissioners would not vitiate and avoid the assessment as against the city. Nor can she be heard to allege, on return to a mandamus, that the charges were exorbitant, or that the public square had been assessed for a share of the benefits, etc. The assessment is returnable before the common council, who are authorized to hear appeals from such assessment and report, and may, in case of appeal, or *otherwise*, in their *discretion*, revise and correct the assessment, and confirm and annul the same, and direct a new assessment to be made. The city is concluded by its own confirmation (City Charter Cap. 7, Sec. 7). The city may not be heard to object for reasons alone applicable to parties interested. She may hear them on appeal, but may not, after confirmation, etc., refuse to proceed, for grounds exclusively available to private persons. They had their remedy for any real or supposed grievance by appeal, and may have lost all redress by neglect to avail themselves of their proper remedy in due time.

The city cannot now, under the facts and circumstances shown, withhold the damages assessed, and the compensation due, for any supposed error alleged. Her remedy was by withholding a confirmation, and setting aside the assessments and report. Other parties have not complained, and she may not complain for them. The remedies given must be pursued, or parties may not be able collaterally to attack proceedings which they have neglected to question directly. *Inglee* v. *Bosworth*, 5 Pick. R. 500; *Dillingham* v. *Snow et al.*, 5 Mass. R. 557; *Hemingway* v. *Inhabitants of Machias*, 33 Maine R. 445; *Sandford* v. *Dick et al.*, 15 Conn. R. 447; *Williams* v. *Holden*, 4 Wend. R. 223.

Mere mistakes or omissions in the assessment list of persons who make no complaint will not render the whole void, where there is no excess of jurisdiction. Ibid.

The assessment of public taxes, or special assessments for public improvements, upon the public property of the state, county or municipal corporations, is a mere question of policy. The power exists to make it bear its share of the one or the other. It may be exempted from the one and subjected to the other. *Canal Trustees* v. *City of Chicago*, 12 Ill. R. 405; *Ross* v. *Mayor of New York*, 3 Wend. R. 335.

The language authorizing an assessment on property for benefits from laying or extending streets (Charter Cap. 6, Sec. 2) is very broad and comprehensive, and no reason is apparent why the public square may not receive a due share of the benefit with any other realty on the same street. The corporation of the city or the county may, if not specially exempted, justly pay a part of the assessments proportionate to the benefits conferred by the improvements. Such mode of apportioning the burthen is very just and reasonable, for under it alone many tax payers will contribute a share for the benefits bestowed on their property in common, who, otherwise, would pay nothing, and yet enjoy the enhanced benefits resulting from the improvement.

I presume no question has ever been made as to a division of the expense for grading and paving the streets and sidewalks around the public square. Nor can I perceive any distinction between this improvement and that of benefits derived from opening or lengthening out streets upon the public square. The public convenience and advantage is as much promoted and improved by a way to the public square as around it, so far as a distinction of principle is involved, if not in degree. We have been referred to no special provision exempting it. We find none in the city charter, and can perceive none in general principles or authorities, for it is not a tax falling within the provisions of the revenue laws. 12 Ill. and 3 Wend., *ubi supra*.

A peremptory mandamus should, therefore, be awarded, compelling the city to proceed with the collection of the assessment; for section 52 of the amended charter of February 16, 1857, authorizes special warrants forthwith for the collection of special assessments, although no collection can be enforced by judgment against the land itself and judicial sale before the first Tuesday in January, as provided in sections 40 and 51.

Where personal property may be found, no necessity will arise for resort to the court for judgment against the lands or lots assessed (Charter Cap. 8, Sec. 4), for a lien is created upon the personalty from the delivery of the warrant to the collector. So the full assessments may be completed without resort to the courts, in case personal property can be found.

*Peremptory mandamus awarded.*