RUSSELL C. MIX

*v.*

CHARLES M. ROSS *et al.*

57   121
126   96

57   121
130   573

57   121
134   321

57   121
143   567

1. SPECIAL ASSESSMENTS—*whether collectible out of personal property.* Where a city charter provides that all taxes and assessments shall be a lien upon the real estate upon which they are imposed, and on personal estate from and after the delivery of the warrant for the collection thereof until paid, and any personal property belonging to the debtor, may be taken and sold for payment of taxes on real estate, and all taxes and assessments, general and special, shall be collected by the collector, in the same manner and with the same powers as are given by law to collectors of State and county taxes: *Held,* that this provision only confers power on the collector to sell personal property for the payment of taxes; that taxes and assessments are a lien on real estate upon which they are imposed, and taxes are a lien on personal property.

2. Although the charter confers upon the city collector the same power to collect taxes and assessments as is possessed by collectors of State and county taxes, the general revenue laws expressly authorize the collection of such taxes from personal property, and that real estate shall not be sold for taxes while there is personal property, out of which it may be collected. And there being a plain distinction between a tax and an assessment, the one being a burden and the other an equivalent for the enhanced value of the property assessed, derived from the improvement: *Held,* that the general revenue law confers no power on the city collector, by the provision of the charter, to sell personal estate in satisfaction of any assessment.

3. STATUTES—*construction—taxes—assessments.* The act of the 1st of March, 1854, prescribing the mode of selling real estate, for the non-payment of taxes and assessments, makes a distinction between taxes and assessments, by making them distinct subjects of two sections.

4. When a statute gives a new power and also provides the means of executing it, those claiming the power can execute it in no other manner, and where power to make assessments is given, their payment can only be enforced in the method prescribed by the statute.

5. The charter having provided that on the non-payment of such assessments, the collector shall apply to the county court for judgment against the land, and that the court shall render judgment therefor and issue a precept to the sheriff to sell the land, makes it a proceeding *in rem*, and the only peril the owner incurs is the loss of his lot.

6. CORPORATION—*powers*. A corporation must show a grant, either in terms or by necessary implication, for all the powers it attempts to exercise, and especially so when it claims the right, by taxing or otherwise, to divest individuals of their property without their consent.

7. EQUITY—*jurisdiction*. In a case of this character, it is too late to raise the question of equitable jurisdiction, for the first time, in this court.

APPEAL from the Court of Common Pleas of the city of Aurora; the Hon. RICHARD G. MONTONY, Judge, presiding.

The opinion states the facts of the case.

Messrs. PARKS & ANNIS, for the appellant.

Messrs. CANFIELD & NICHOLS, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill for an injunction, to restrain the city collector of Aurora from proceeding to sell a span of horses of the appellant, which said collector had seized and taken under and by virtue of a warrant issued to him for the collection of a special assessment of $119, which had been made upon a lot of the appellant, in said city, as and for the special benefit which would be conferred upon said lot by the construction of a sidewalk in front of it. The court below, on motion, dissolved the injunction and dismissed the bill, and assessed damages on account of the injunction.

The only point we shall consider is, whether there was any legal authority to levy upon and sell personal property to pay this special assessment.

Parts of sections 4 and 7 in chapter 3, of the charter of Aurora, are relied on as conferring such authority, which read as follows:

"Sec. 4. All taxes and assessments, general or special, levied on or assessed by the common council under this act or the act to which this is an amendment, shall be a lien upon the real estate upon which the same may be imposed, voted or assessed, for two years from and after the corrected assessment roll shall have been confirmed, and on personal estate from and after the delivery of the warrant for the collection thereof until paid, and no sale or transfer shall affect the lien. Any personal property belonging to the debtor, may be taken and sold for the payment of taxes on real or personal estate.

"Sec. 7. All taxes and assessments, general or special, shall be collected by the collector or collectors, in the same manner and with the same power and authority as are given by law to collectors of county and State taxes."

It is said that the first clause of sec. 4 specifically declares, that special assessments shall be a lien on personal estate, &c.; but that is to be read in connection with the second clause, which declares, that any personal property of the debtor may be taken and sold for the payment of *taxes* on real or personal estate. The word *assessments*, used in the preceding clause, is here dropped, and the mention that personal property may be sold for the payment of taxes, excludes the idea that it may be sold for the payment of assessments; only that is a lien which the personal estate may be sold to pay—so that the true reading of the first clause, taken together with the second, is, that all taxes and assessments, general or special, shall be a lien upon the real estate upon which they are imposed, and all taxes, shall be a lien on personal estate, &c.

It is again argued, that the collector of Aurora, having by its charter the same power and authority as the collector of State and county taxes, must have the right to levy upon

and sell personal property for this assessment, as the collector of State and county taxes is required by law to make the amount of a person's real and personal tax out of his goods and chattels; and that section 155 of the revenue act, Gross' Statutes, 594, provides, that personal property shall be liable for taxes levied on real property ; and section 8 provides, that no real estate of any person shall be sold for taxes while personal property of such person can be found by the collector.

These are all provisions of law relating to taxes ; but the assessment in question is not a tax.

There is a plain distinction between *taxes*, which are burdens or charges imposed upon persons or property to raise money for public purposes, and *assessments* for city or village improvements, which are not regarded as burdens, but as an equivalent or compensation for the enhanced value which the property of the person assessed has derived from the improvement. *Sharp* v. *Speir*, 4 Hill, 76.

In *Canal Trustees et al.* v. *The City of Chicago*, 12 Ill. 403, it was held, that the exemption of the canal lands and lots from " taxation of every description," by and under the laws of the State, did not extend to a special assessment for widening an alley into a street, in Chicago ; and the exemption was held to apply only to taxes levied for State, county and municipal purposes. The act of March 1, 1854, prescribing the mode of proceeding to sell real estate for the non-payment of taxes and assessments, takes the distinction between taxes and assessments, in making them distinct subjects of two separate sections ; the first section providing, that, " in all cases where taxes assessed on real estate, by the corporate authorities of any city or town, are not paid," &c.; the second section providing, " in all cases where assessments, made by the corporate authorities of any town or city, on any lot or real estate in such town or city, for the purpose of improving any street," &c., are not paid, &c. Gross' Statutes, 121.

It is a rule that when a statute gives a new power, and at the same time provides the means of executing it, those who

claim the power can execute it in no other way. When we find a power to make the assessments, their payment can be enforced in the method directed by the statute, and not otherwise. *Andover & Medford Turnpike Corporation* v. *Gould*, 6 Mass. 44.

The only mode that we discover to be provided by statute, for enforcing the collection of this assessment, is that pointed out in the second section of the statute above cited, by application to the county court for judgment against the lot for the amount of the assessment, and that the county court shall render judgment against the lot for the amount of the assessment and issue its precept to the sheriff, commanding him to sell the lot, or so much thereof as may be necessary, to pay the judgment. It is a proceeding *in rem,* and the only peril to which the owner of the lot is exposed, by the non-payment of the assessment, is the loss of the lot.

A corporation must show a grant, either in terms or by necessary implication, for all the powers which it attempts to exercise ; and especially must this be done when it claims the right, by taxing or otherwise, to divest individuals of their property without their consent. *Sharp* v. *Speir, supra.*

What was said in *Higgins* v. *The City of Chicago,* 18 Ill. 276, as to a lien for an assessment being created on the personalty, from the delivery of the warrant to the collector, we take to have been with reference to a special provision in the charter of the city of Chicago.

No question appears to have been raised in the court below, as to the jurisdiction of a court of chancery in this case, and it is too late to raise it for the first time here.

The decree of the court below is reversed and the cause remanded for proceedings in conformity with this opinion.

*Decree reversed.*