### THE CITY OF LAFAYETTE v. SHULTZ ET UX.

CITY.—*Appropriation of Land for Street.*—*Liability for Damages.*—When commissioners appointed to assess damages and benefits resulting to lot owners by the opening of a new street in a city, proceeding in accordance with the statute, assess damages to a lot owner and report to the common council, and the common council, within the twenty days limited by the statute, accept such report and make an order of appropriation of land for the street, in accordance with the report of such commissioners, the city becomes liable at once for the payment of the damages assessed; and on the failure or refusal of the council to appropriate money for the payment of such damages, a suit lies against the city therefor.

SAME.—After the council has accepted the report of the commissioners and made the proper order for the appropriation of the land necessary for the street, the right of the land-owner to the damages assessed becomes absolute. The council cannot, therefore, set- aside the assessment, nor by refusing to open the street avoid the payment of such damages.

SAME.—The party in whose favor damages have been assessed is not required to wait for compensation until the city collects the benefits assessed against other property on the line of the proposed street.

From the Tippecanoe Circuit Court.

*W. D. Wallace,* for appellant.

*J. R. Coffroth* and *T. B. Ward,* for appellees.

OSBORN, J.—On the 30th of October, 1871, the common council of the city of Lafayette passed an ordinance to

locate and open a street in that city, to be called Fourteenth street, by which it was proposed to appropriate real estate belonging to the appellee Catharine, the wife of Philip Shultz. On the 21st day of December, of the same year, the proper commissioners met and assessed damages to Mrs. Shultz, on account of the proposed appropriation of her property, in the sum of one thousand eight hundred dollars, and they assessed no benefits against her. On the same day, the commissioners filed with the clerk of the city their report, showing,

1st. The value of the land or other property to be appropriated by the opening of the street.

2d. That no part of the expense of the opening of such street ought to be borne by the city.

3d. What real estate would be benefited by the opening of the street, specifying the parcels, with the names of the respective owners, and the proportion of benefits received by each, and showing that Mrs. Shultz would sustain damages as the owner of the real estate proposed to be appropriated, in the sum of one thousand eight hundred dollars, by reason of the opening of the street.

On the 8th day of January, 1872, the common council accepted the terms of the report and made the appropriation of the real estate for the street. Afterward, on the 1st day of February, 1872, Mrs. Shultz demanded payment of the city for the sum so assessed as her damages, which was refused, and it remains wholly unpaid. On the 9th of August, 1872, the appellees instituted a suit against the appellant, to recover the amount with interest from the date of the acceptance of the terms of the report of the commissioners, and in the complaint alleged the facts above stated. The appellant demurred to the complaint, assigning for cause that it did not contain facts sufficient to constitute a cause of action. The demurrer was overruled, the appellant excepted, refused to answer, and final judgment was rendered against her for the amount claimed.

The error assigned is in overruling the appellant's demurrer to the appellees' complaint.

The only question raised is the liability of the city to pay the amount of the damages of Mrs. Shultz as fixed by the commissioners, on the facts alleged in the complaint. The proceedings of the city and the commissioners are admitted to be in all things regular and in full compliance with the provisions of the act of the legislature for the incorporation of cities, approved March 14th, 1867. 3 Ind. Stat. 63.

By that act, the common council have power to lay out, survey, and open new streets within the city. Sec. 61, p. 94. They shall appoint once in each year five commissioners, * * * to appraise and assess damages and benefits accruing to the owner of any land or lot through which any street is proposed to be constructed. * * * Notice shall be given of the time and place of making the appraisement. Sec. 62, pp. 95, 96. At the time and place indicated in such notice, the commissioners shall " proceed to an examination of the real estate proposed to be appropriated as aforesaid, and shall then and there estimate,

"1st. The value of the land, or other property, to be appropriated for such improvement.

"2d. What part thereof, if any, ought to be borne by the city.

"3d. What real estate, if any, would be benefited by the improvement, specifying the same in parcels, with the name of the owner, if known, and the proportion of benefits each would receive, and the proportion of damages sustained by each. * * * They shall report on each of the specifications above indicated, and, within ten days thereafter, file the same with the clerk of the city." Sec. 63, p. 96.

" Sec. 64. When such report is filed, * * * the common council, if it accept the terms of the same, shall direct the treasurer of the city to tender to the owner, or owners, of such real estate, or their heirs or representatives, the damages awarded by such commissioners, deducting the amount of benefits assessed to such owner or owners ; or, if not found within the city, or the award is not accepted, then

the same shall be kept by the treasurer as a special deposit, subject to the order of such owner, or his heirs or representatives."

By section 65, the common council are required to cause an assessment list to be made of the real estate assessed as benefited, directing such amounts to be assessed upon such parcels of real estate respectively, which shall be collected as other assessments for public improvements.

Sec. 66 requires the common council to accept or reject the terms of the report of the commissioners, within twenty days from the filing of the same. It gives to any owner of land an appeal from the report, but no such appeal shall prevent the city from proceeding with the appropriation and improvement as if no appeal had been taken, and no other question shall be determined than the regularity of the proceedings in the suit, and the amount of damages sustained.

The ordinance locating the street, the appraisement, and report of the commissioners are preliminary to the final act of the common council accepting the terms of the report and making the appropriation of real estate. Twenty days are allowed to the council to consider whether the terms of the report shall be accepted or rejected. During that time, it is optional with them, whether the street shall be located and established and the appropriation of the lands made for that purpose as proposed, or abandoned. If they determine to establish the street, they accept the terms of the report. If they conclude not to establish the street, they reject the report. When the report is thus accepted, the final act of appropriation of the lands for the street as proposed in the ordinance is complete as against the city, and it becomes liable to pay to the owners of land appropriated the damages awarded by the commissioners, as provided in section 64, *supra. Stafford* v. *Mayor, etc., of Albany,* 7 Johns. 541. In that case it was held that after an assessment had been affirmed, it could not be set aside, but the city must pay the assessment, and an action of assumpsit was sustained to recover the amount. The act in that case required the

city to pay the amount of the appraisement on demand, whilst section 64 of the act for the incorporation of cities requires the city to tender the damages awarded to the owner. If not accepted, it must be kept by the treasurer as a special deposit, subject to the order of such owner.

In *Higgins* v. *The City of Chicago*, 18 Ill. 276, it was held that where a street had been ordered to be opened, and an assessment was made and confirmed, it was too late for the city to object on account of irregularities in the proceedings, and the parties interested were entitled to their remedies for the collection of the assessments. In *The City of Chicago* v. *Wheeler*, 25 Ill. 478, which was an action of assumpsit for the recovery of damages awarded to the plaintiff, which he had sustained by the appropriation of his real estate for the use of the city in the extension of the street, it was held that the action would lie for the amount of the award, notwithstanding irregularities in the proceedings to make the appropriation.

Without multiplying authorities, we think that when the city accepteb the terms of the report of the commissioners, it elected to make the appropriation of the real estate of the appellee for the street proposed in the ordinance; that the amount assessed to her as damages on account of such appropriation was then due to her, and the treasurer of the city should have been directed to tender it to her. Sec. 64, 3 Ind. Stat. 96. Until such acceptance, the proceedings could have been discontinued, or the report of the commissioners rejected. Dillon Municipal Corp., secs. 473, 474, 475.

It is insisted, however, that the tender required in section 64 is not to be made until the assessments are collected, as provided in section 65, that is, the city is not required to pay the money before it is collected, and the amount made out of the property benefitted.

We cannot adopt such a construction of the statute. The language of section 64 is explicit,. that if the common council accept the terms of the report of the commissioners, they

shall direct the treasurer of the city to tender the money to the owner of the land.    It not only requires such tender to be made, but it also requires the treasurer, in case the owner refuses to accept the money, or is not found, to keep it as a special deposit, subject to the order of such owner.

There is nothing in the statute indicating that the owner of the property appropriated is to look to the assessments for compensation, or wait until they are collected before he is entitled to his pay.    On the contrary, section 64 contemplates that when the common council accept the terms of the report of the commissioners, they must at the same time direct the treasurer of the city to tender the money to the owner of the property.    The assessments when collected go into the city treasury, to reimburse it for the amount advanced.

As we have already stated, when the common council have accepted the terms of the report of the commissioners, the appropriation of the land is final and complete as against the city.    It is then too late for the council to abandon or revoke their proceedings, so as to defeat the owner's right to the sum awarded.    *Harrington* v. *The County Commissioners, etc.*, 22 Pick. 263.    An appeal cannot prevent the city from proceeding with the improvement, and no other question can be determined on such appeal than the regularity of the proceedings in the suit, and the amount of damages sustained.

The assessments are to be collected by a sale of the property assessed, if the amount is not paid by the owner.    If it should fail to sell for an amount sufficient to pay the assessment, then, if the construction contended for by the appellant is correct, property will be appropriated for a street for which the owner is not paid and has no means of enforcing payment, or else the property assessed will have been sold to pay for benefits received by the location of a street which has not been and cannot be opened.

We do not consider it necessary to decide whether a city can appropriate and take possession of real estate for a street without first tendering compensation therefor.    We refer,

however, to *Dronberger* v. *Reed,* 11 Ind. 420, and *The City of Lafayette* v. *Bush,* 19 Ind. 326.

The judgment is affirmed, with costs and five per cent. damages.