Edward Rutz *et al.*

*v.*

Edward G. Kehn *et al.*

*Filed at Mt. Vernon May 9, 1891, and January 18, 1892.*

1. CAHOKIA VILLAGE—*power to hold lands.* By virtue of an act of Congress, the inhabitants of Cahokia village were, as a community, by implication, constituted an artificial or corporate body for the purposes of receiving and holding the lands donated, for the benefit of the community as a body of people, but for no other purpose. But the act of Congress did not necessarily clothe that body with power to convey or otherwise dispose of such lands, and it was competent for the legislature to authorize them to make such disposition.

2. SAME—*power of supervisor to survey and lease lands therein.* By the act of 1841 the supervisor of Cahokia was authorized to cause the commons to be surveyed and platted, and to lease the lots at public auction to the highest bidder, and by the amendatory act of 1857 he was authorized to lease at private sale. The term for which the lease might extend, in either case, is limited to ninety-nine years, and according to the well-settled rule of law this authorizes leases in possession, and not in reversion or *in futuro.*

3. A lease by the supervisor of Cahokia village for ninety-nine years, in strict accordance with the law, will be good, and any subsequent lease by the supervisor, so far as it affects the prior lease, or any part of the land covered thereby, is wholly unwarrantable and absolutely void. By a former decision of this court this ruling has become a rule of property.

4. SAME—*lease of lands—burden of showing validity of lease.* The respective powers of the village of Cahokia to lease and convey, are purely statutory powers; and the rule in such cases is, that those who claim by virtue of the execution of such powers must affirmatively show that they were executed as the statute enacts they shall be. What the statute says can be done, and that only, may be done, and in the manner that it directs.

5. SAME—*right of lessee to purchase the fee—a property right.* By section 5 of the act of March 21, 1874, persons holding any portion of such title by existing leases had the right to acquire the fee simple title thereto by paying a sum which, at three per cent per annum, will produce annually a sum equal to the rent due yearly under the lease proposed to be extinguished by the purchaser. This is such a property right that the lessee can not be divested of it, without his consent, by

any act of the village, or any one representing it, nor can it in anywise be encumbered or abridged by a subsequent lease.

6. ACCRETIONS—*to lots leased, bounded on the west by the Mississippi river—who entitled to.* A lease of lots which are described therein as "bounded on the west by the present bank of the Mississippi river," etc., will include the accretions formed on the west ends of such lots.

7. ESTOPPEL—*of grantee by acts of grantor.* The privies of a grantor who is estopped are not estopped if they are subsequent purchasers for value and have no notice that he is estopped. So the fact that the holder of a lease for lots whose west ends were bounded by the Mississippi river, so that he was entitled to the accretions to the west ends thereof, may have, while in possession thereof, actively participated in procuring a plat of the accretions as separate lots, will not estop his grantee for value, and without notice of such acts, from claiming the accretions, as against another claiming the same but who was not in possession.

8. BILL TO REMOVE CLOUD—*essential allegation in.* An allegation in a bill to remove a cloud from the title to land, that the complainant is in possession, or that the premises are vacant and unoccupied, is essential to give the court jurisdiction.

9. APPEAL—*to Supreme Court direct—when freehold is involved.* Where the decision upon a bill to set aside a deed as a cloud upon title must either give or deny to the defendants a title in fee, a freehold is involved, and an appeal lies directly from the trial court to this court. Thus, where the defendants claim the fee to so much of certain lots as falls within the deeds under which they claim, and such deeds are set aside as clouds on the complainants' title, a freehold will be involved.

10. CHANCERY PRACTICE—*preserving evidence to sustain the decree.* Where the decree fails to find the facts upon which it is founded, the complainant can only sustain his decree by preserving the evidence on which it is based, in the record, and on an appeal or writ of error, if he has failed to do so, the decree will be reversed.

11. Where a material allegation in a bill is not supported either by the finding of the court in its decree or evidence preserved in the record, the decree can not be upheld, and it will be reversed.

12. PRACTICE IN SUPREME COURT—*motion to strike evidence from record.* This court will not pass upon a motion to strike from the record certain evidence as improperly included therein, when it appears that the court below decided correctly, even if that evidence be regarded as not properly included in the record.

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

Mr. T. E. Merritt, and Mr. E. L. Thomas, for the appellants:

Where the owner of property, real or personal, sees another having no right, or a limited right, about to sell it absolutely to an innocent purchaser, he must speak and assert his ownership, otherwise he will be estopped from setting up his title against such purchaser or one claiming under him. *Harding* v. *Le Moyne*, 114 Ill. 65; *Hill* v. *Blackwelder*, 113 id. 283; *Picard* v. *Sears*, 6 A. & E. 469.

Silence in one standing by and seeing deeds made to land which he claims and owns, to innocent third persons, has been held to work an estoppel. *Niven* v. *Belknap*, 2 Johns. 573.

In this case an active part was taken by McCracken in this sale, his consent given, and $30,000 paid by Rutz, Beveridge and Lovingston for a deed to this land, made in McCracken's presence and he advising it. *Knouf* v. *Harris*, 4 Harr. 361; *Hill* v. *Blackwelder, supra.*

Is the grantee of McCracken estopped? It is a familiar principle that a. grantee can take no better right by his deed than that had by the grantor. He takes the estate subject to everything that could be urged against the grantor if still held by the grantor. Bigelow on Estoppel, 277.

This applies with much force to the case at bar, as the plat, lease and deeds were of record for more than ten years before complainants purchased, and they were put upon their guard by that fact.

Relief not sought for by the bill should not be decreed. *Dodge* v. *Wright*, 48 Ill. 382.

This bill seeks to remove a cloud on the title of complainant's lots 228, 229 and 232. The decree sets aside a deed *in toto*, when the deed contains other property not affecting complainant.

A decree can not properly be entered in regard to the rights of persons not parties to the suit. *Sevier* v. *Magguire*, 49 Ill. 66; *Blue* v. *Blue*, 38 id. 9.

This decree seeks to protect the inhabitants of Cahokia who are not parties to the suit, and also McCracken, who is not a party and who assisted in procuring what the decree sets aside as a fraud on him.

It is perfectly well settled that the owner of a remainder may lease or otherwise dispose of it. 2 Washburn on Real Prop. (3d ed.) chap. 4, sub.-sec. 2, p. 498.

An estate in fee simple may be divided and carved up into any number of lesser estates. And one of the qualities of a remainder is that it may be aliened in any form known to the law, and is an estate *in praesenti,* although enjoyment is postponed to a future time. Ibid. sub.-sec. 20, p. 512.

· The law is so laid down in Tiedeman on Real Prop. secs. 398, 399.

Anything lying in livery or grant may be demised. (Taylor on Landlord and Tenant, chap. 1, sec. 17.) And it may commence *in futuro.* Ibid. sec. 72.

Mr. Edward C. Kehr, and Mr. G. A. Koerner, for the appellees:

When a decree is justified by the pleadings and the facts recited in the decree, it is the duty of the defendant to preserve the whole evidence by certificate of evidence, if he questions its sufficiency to justify the findings of the court. *Morgan* v. *Corlies,* 81 Ill. 72; *Johnson* v. *Railroad Co.* 111 id. 413.

The decree can have no force except as between the parties to it and concerning the subject matter involved in the suit. If it went further, plaintiffs in error could not be prejudiced. It would not be a bar to proceedings as between them and others, or between them and defendants in error, as to any controversy not involved in this suit. *Davis* v. *Kennedy,* 105 Ill. 306; *Town of Lyons* v. *Cooledge,* 89 id. 529; *Yeates* v. *Briggs,* 95 id. 79.

The decree being justified by the pleadings and findings of the court recited in it, must be affirmed, in the absence of

36—143 Ill.

evidence preserved in the record sufficient to overcome those recitals. *Morgan* v. *Corlies,* 81 Ill. 72.

By the leases of July, 1860, the lessee, McCracken, and those holding under him, took the land to the center thread of the river. This is the settled rule of law in Illinois and has become a rule of property. *Middleton* v. *Pritchard,* 3 Scam. 510; *Cobb* v. *Lavalle,* 89 Ill. 331; *Canal Trustees* v. *Haven,* 5 Gilm. 548; 11 Ill. 554; *Ensminger* v. *People,* 47 id. 384; *Chicago* v. *McGinn,* 51 id. 266; *Chicago* v. *Laflin,* 49 id. 172; *Lovingston* v. *St. Clair County,* 64 id. 56; 23 Wall. 46; *Braxon* v. *Bressler,* 64 Ill. 488; *Lombard* v. *Kinzie,* 73 id. 446; *Railroad Co.* v. *Stein,* 75 id. 41; *Houck* v. *Yates,* 82 id. 179; *Railroad Co.* v. *Cobb,* 82 id. 183; *Ice Co.* v. *Shortall,* 101 id. 46; *Brooklyn* v. *Smith,* 104 id. 429.

The doctrine of estoppel should never be applied against a *bona fide* purchaser without notice. *Hay* v. *Arnold,* 18 Ga. 182; Rawle on Covenants, (4th ed.) 446.

The statement to create an estoppel must be a statement of facts and not a statement of law. Bigelow on Estoppel, 486; *Gove* v. *White,* 20 Wis. 425; *Tongue* v. *Nutwell,* 17 Md. 212; *Brewster* v. *Striker,* 2 N. Y. 19; *Platt* v. *Scott,* 6 Blackf. 389.

The person making it must be aware of his own rights. Bigelow on Estoppel, 503; *Lewis* v. *San Antonio,* 7 Tex. 288; *Whitaker* v. *Williams,* 20 Conn. 98; *Odlin* v. *Gove,* 41 N. H. 465.

He must have induced the other party to occupy a position which the latter would not have occupied but for such acts and declarations. *Hefner* v. *Vandolah,* 57 Ill. 520; *Ball* v. *Hooten,* 85 id. 159.

McCracken's leases were of record and he was in possession of the premises here in dispute. The facts were as well and as fully known to Illinski as they were to McCracken. The latter made no declaration as to the facts. Both acted under a mistake of law with respect to the legal effect of the leases

of 1860 upon the accretions. Both had the same sources of information, and the one was as much bound to know the law as the other. It is settled law that where the owner has had his deed duly recorded or is in possession, he has given all the information which the law requires, and no act or declaration will estop him from asserting his title. *Mills* v. *Graves*, 38 Ill. 455; *Brant* v. *Virginia C. & J. Co.* 93 U. S. 326; *Rice* v. *Dewey*, 54 Barb. 455; *Mayo* v. *Cartwright*, 30 Ark. 407; *Mason* v. *Philbrook*, 69 Me. 57; *Sulphine* v. *Dunbar*, 55 Miss. 255; *Kneuff* v. *Thompson*, 16 Pa. St. 357; *Crest* v. *Jack*, 3 Watts, 240.

The doctrine of estoppel is in direct conflict with the recording laws, and these laws, under the modern system of conveyancing, are a virtual repeal of the doctrine of estoppel. *Way* v. *Arnold*, 18 Ga. 181; *Earle* v. *Fiske*, 103 Mass. 491; *Kennedy* v. *Northup*, 15 Ill. 149.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a bill by appellee, against appellant, to remove a certain village plat, and a lease and conveyances of lots laid out and designated on that plat, as clouds upon appellees' title to certain village lots, whereof he claims to be seized in fee.

The facts presenting the questions of law discussed in argument are: On the 22d day of July, 1860, the village of Cahokia leased, by deed of that date, lots 228, 229 and 232 of the third subdivision of its commons, to Nicholas McCracken, for the term of ninety-nine years then next ensuing, and he thereupon, by virtue of that lease, entered into possession of the lots and retained it until he sold and assigned his lease to appellee. The deed described the lots as "bounded on the west by the present bank of the Mississippi river." After the execution of the deed accretions formed on the west ends of these lots, and, on the 4th of March, 1872, the village of Ca-

hokia caused a plat of such accretions to be made and recorded in the proper office, designating them thereon as 302 of the fourth subdivision, and lots 304, 305 and 306 of the sixth subdivision, of Cahokia commons. On the 23d of November, 1872, the village, by deed of that date, assumed to lease such accretions, by the description of the lots thus designated on this plat, to Illinski, for the term of ninety-nine years then next ensuing. On the 12th of July, 1873, Illinski sold, and assumed to assign and convey, by deed of that date, the undivided one-sixth of the remainder of his term to Rutz, and on the 27th of May, 1874, he also assumed to assign and convey, by deed of that date, the undivided one-twelfth of his term to Beveridge. On the 27th of November, 1876, the village assumed to convey the fee in this property, the undivided seven-twelfths to Illinski, an undivided one-sixth, each, to Rutz and Lovingston, and an undivided one-twelfth to Beveridge. There were, subsequently, assumed conveyances and reconveyances by Lovingston to Abend, and from Abend to Lovingston, and on the 22d of March, 1879, there was also executed an assumed conveyance by Illinski and wife to Rutz, of the whole of the premises. On the 24th of February, 1882, McCracken sold, and assigned by deed of that date, the remainder of his term to appellee. After that, and before the filing of the bill, the village conveyed the fee in the lots described in the lease to McCracken, to appellee. The deeds were all recorded, in apt time, in the proper office, and no question is presented for our consideration in that respect.

A motion was made, upon the argument of the case, to dismiss the appeal because a freehold is not involved, and that therefore the appeal should have been to the Appellate Court for the Fourth District. This motion was reserved until the hearing, and must, of course, be disposed of before considering questions upon the merits. The defendants claim the fee of so much of the original lots as falls within the description in the conveyances under which they claim, and

which are by the decree below set aside as clouds upon appellees' title. The decision of the case must therefore either give or deny to them a title in fee, and so, necessarily, a freehold is involved in the case. The motion is overruled.

Another preliminary question is presented by a motion to strike out of the record certain evidence, because not properly included therein. We do not find it necessary to pass upon that question, since, in our view of the case, the court below decided correctly, even if that evidence be regarded as not properly included in the record.

Proceeding, then, to the merits of the case as presented by the record before us, the first question is, did the lease to Mc-Cracken include within its boundaries the accretions formed on the west end of the lots described therein? This is not now an open question in this court. The description in the leases "bounded on the west by the present bank of the Mississippi river," is identical with that in *Cobb* v. *Lavalle*, 89 Ill. 331, and we held in that case that it included the accretions formed on the west end of the lots.

The next question is, whether appellee is estopped by the acts of his grantor, McCracken, from treating these accretions as not being within the terms of his lease, upon the faith of which in part, Illinski acted in purchasing his lease. Mc-Cracken was in the actual possession of the entire lots, and his lease was of record, when Illinski purchased. The acts claimed as an estoppel are only that McCracken actively participated in procuring the plat of the accretions, to be made by the village. Illinski did not take actual possession of the accretions after his lease was executed and before the purchase of appellee, and there was no public record affording constructive notice to all of the acts of McCracken which are claimed to amount to an estoppel, and there is no evidence that appellee had actual knowledge thereof at or before the date of his purchase, and he was therefore entitled to rely upon McCraken's actual possession and the terms of his lease, as of record, in

determining the character and the boundaries of his lease. The rule is, the privies of a grantor who is estopped are not estopped if they are subsequent purchasers for value, and have no notice that he is estopped. Tiedeman on Real Prop. sec. 731; 3 Washburn on Real Prop. 91, and cases cited in note; Bigelow on Estoppel, (4th ed.) 434, 435.

On first considering this case, we were of the opinion that, assuming the correctness of the foregoing conclusions, yet there still remained in the village, after the expiration of the lease to McCracken, the remainder in fee in the soil, which the village might, by a new plat, re-divide into lots, setting off the accretions in lots, apart from the lots on the ends of which they were formed, as was here done, and that Illinski's lease, and the conveyances resting on the supposed validity of that lease, should therefore be held valid for the remaining estate in the accretions,—namely, the reversion after the termination of McCracken's lease thereof,—and so we gave judgment. Subsequent and more careful reflection after listening to further argument, on a rehearing of the case, has satisfied us that we were in error in thus adjudging, and this for two reasons, by neither of which was our attention before sufficiently attracted to appreciate its force.

*First*—It was decided directly to the contrary in *Haps* v. *Hewett et al.* 97 Ill. 498, and that decision has become a rule of property, and for that reason, if for no other, it ought not to be now overruled. The only difference between the facts in that case from those in this, material to this question, is, that there it was erroneously supposed that a proper plat pursuant to which the first lease was executed was not made, while here it was erroneously supposed the plat pursuant to which the first lease was executed did not include the property in controversy. In each case both leases covered the same ground, and therefore if the Illinski lease here is good for the reversion after the termination of the McCracken lease, there the Illinski lease must also have been good for the reversion after the

termination of the Walsh lease. But it was there said: "The lease of the supervisor to Walsh being authorized by law and regular in every respect, so far as we can discover, the subsequent lease to Illinski, so far as it affected the lot in controversy, was wholly unwarranted, and absolutely void as to Walsh and those claiming under him."

*Second*—As held in the case last cited, by virtue of the act of Congress, the inhabitants of Cahokia village were, as a community, by implication, constituted an artificial or corporate body for the purposes of receiving and holding the lands for the benefit of the community, as a body of people, but for no other purpose. And it was then added: "The creation of this artificial body, and investing it with the title to these lands, did not necessarily clothe it with power to convey or otherwise dispose of them; but it was entirely competent for the legislature to authorize it to do so, and provide the necessary agencies through which this might be effected." The legislature did, accordingly, by several enactments, provide how these lands might be leased and conveyed. The respective powers to lease and convey were therefore purely statutory powers. And the rule in such cases is familiar that those who claim by virtue of the execution of such powers must affirmatively show that they were executed as the statute enacts they shall be. What the statute says can be done, and that only, may be done, and in the manner that it directs. *Mix* v. *Ross,* 57 Ill. 121; *Dement et al.* v. *Rokker et al.* 126 id. 193; Sutherland on Statutory Construction, sec. 454.

By the act of February 17, 1841, (Sess. Laws, 65,) the supervisor of Cahokia was authorized to cause the commons to be surveyed and platted, and to lease the same at public auction, to the highest bidder, and by the amendatory act of February 18, 1857, (Private Laws, 1203,) he was authorized to lease at private sale. The term for which the lease might extend, in either case, is limited to ninety-nine years; and, according to the well settled rule of law, this authorizes leases

in possession only, and not in reversion or *futuro*.    2 Sugden
on Powers, (3d Am. from 7th Lond. ed.) 310, *346, sec. 10.

The fifth section of the amendatory act of March 21, 1874,
gives to the "person or persons entitled to any portion of such
title by existing leases, the right to acquire the fee simple
title thereto by paying therefor a sum which, at three per cent
per annum, will produce annually a sum equal to the rent due
yearly under the lease proposed to be extinguished by the
purchase." (See Laws of 1874, p. 67.)   This is clearly such
a property right that the lessee could not be divested of it,
without his consent, by any act of the village or any one rep-
resenting it.   Nor could it, for like reason, be in anywise
encumbered or abridged by a subsequent lease.   It is, more-
over, to be observed, the lease to Illinski does not profess to
be of a remainder, but of a present possession, only.

We find no cause to disturb the decree below.   It is there-
fore affirmed.

                                             *Decree affirmed.*


Subsequently, upon an application for a rehearing, the fol-
lowing additional opinion was filed:

Mr. Justice Wilkin: This case is now submitted on a sec-
ond rehearing.   It was first taken at the May term, 1890.
But two grounds of reversal were then urged : First, estoppel;
and second, the decree if permissible is too broad.   We over-
ruled the first point, but reached the conclusion that upon the
merits of the case the decree of the circuit court should be re-
versed.   The second point was therefore unimportant, and was
not considered.   A rehearing having been granted, the argu-
ments on both sides were directed to the point upon which
the reversal had been ordered, and as our attention was not
then called to the objection that the decree was too broad, it
again passed without consideration; but being convinced that
the ground upon which our former decision rested was unten-
able, we affirmed the decree of the circuit court for reasons

stated in an opinion filed May 9, 1891. At the following November term appellants filed their petition for rehearing, insisting, among other things, that their second point on the first argument was well taken, and that the judgment of affirmance without reference thereto, amounted to an approval of a decree affecting the rights of appellants to lands not involved in this litigation, and deeming it but fair to all parties that due consideration should be given to and an opinion expressed on that question, a second rehearing has been granted.

The insistence is, that the decree annuls and declares void the plat and deeds mentioned in the bill, not merely as to the premises in controversy, but absolutely. The language used in the decree is certainly not as explicit as it should be in confining the order removing the plat and deeds as clouds upon the title to the premises described in the bill, and yet we are inclined to the opinion that when construed with reference to the bill and answer, as it must be, it can not fairly be said to vacate said plat or declare void and of no effect said deeds as to other lands than those described in the bill. However, as the decree must be reversed upon another ground, the objection here urged may be avoided on another hearing, if the same result should be reached.

A second ground of reversal now urged is, that the decree does not find, nor does the proof show, that the complainants were in possession of the premises in question when the bill was filed. It is admitted that the decree is silent as to that fact, and the evidence not being preserved in the record there is no proof of it. Appellants attempt to avoid the force of this objection by insisting that the bill is not one to remove a cloud upon title, but that its object is to set aside the deeds therein mentioned, upon the ground of fraud. In this view we do not concur. The case made by the bill is clearly one to remove a cloud resting upon the title of complainant, and has been so treated by all parties and the courts to the present time. It expressly alleges that complainants are in

possession. That allegation, or one that the premises were vacant and unoccupied, was essential to give the circuit court jurisdiction. The allegation as made was specifically denied by the answer, and complainants, to maintain their bill, were bound to prove it. This they say they did, and insist that if appellants desired to question the correctness of the decree below they should have procured a certificate of the evidence, without which this court must presume that the decree is correct. That clearly is not the rule when the decree fails to find the facts. In that case the "complainant can only sustain his decree by preserving the evidence on which it is based in the record, and on appeal or writ of error, if he has failed to do so, the decree will be reversed." This being a material and necessary allegation in the bill, wholly unsupported either by the finding of the court in its decree or evidence in the record, the decree can not be upheld, and on this ground it must be reversed.

The further point, that the decree is in favor of parties having only an equitable title to the premises as well as the owner of the fee, is not of material importance. Certainly, if error at all, it is not harmful to appellants.

The correctness of the decision announced in the opinion of May 9, on the questions therein discussed, is not now challenged, but the rehearing was asked and a reversal is now urged only upon the three grounds above mentioned. The decree of the circuit court will therefore be reversed for the reason above stated, and the cause remanded to the circuit court of St. Clair county, with directions to proceed in the cause consistently with the views expressed in this and said former opinion.

*Decree reversed.*