HARRISON *v.* STATE HIGHWAY DEPARTMENT OF GEORGIA *et al.*

No. 11398.   NOVEMBER 11, 1936.

*John S. Gibson,* for plaintiff.

*S. M. Mathews* and *B. S. Miller,* for defendant.

RUSSELL, Chief Justice.   The record in this case presents the question whether the State Highway Board and its members can be compelled by writ of mandamus to pay the sum of money found by a jury in favor of the condemnee in condemnation proceedings which the board had begun and prosecuted to final judgment, no writ of error having been sued out from the final judgment.   The petition for mandamus was filed by T. H. Harrison, who was the defendant in the condemnation proceedings.   Rule nisi was issued; and when the case came on to be heard on its merits, all questions of law and fact and certain agreed facts were by the parties submitted to the judge for his decision without the intervention of a jury.   The facts agreed upon were to the following effect:   The State of Georgia, through its State Highway Department had theretofore filed a condemnation suit in rem, under the act of 1914 (Ga. L. 1914, p. 92, Code, § 36-1104 et seq.), against Harrison's land.   Assessors, who had been appointed for the purpose, had fixed the value of the land sought to be condemned at $2000; they had also fixed the consequential damages at $1500, and the consequential benefits at $500; the condemnors appealed from the award of the assessors to a jury, who in their verdict found in favor of Harrison $2232.50, and on this verdict the court entered a judgment, which was prepared by counsel for Harrison, but was not consented to by counsel for the State or its highway department.   In that judgment the court adjudged the fee-simple title to the land involved in the condemnation suit "to

be and the same is hereby decreed to be in . . the State Highway Board," etc., "upon payment by it into the registry of the court, for the use . . of T. H. Harrison, of the sum of $2232.50, for which amount judgment is hereby rendered against the said State Highway Board of Georgia, in favor of . . T. H. Harrison; and in addition thereto judgment is hereby rendered against said . . State Highway Board of Georgia for . . costs in said case, for use of the officers of court." The statement of agreed facts further recites that neither the State nor the Highway Department nor any one in their behalf, had asserted title to, or taken, or damaged the property, or said or done anything which interfered with Harrison's title thereto or that of any one else, "nor has said property been damaged in any way other than by the pendency of the condemnation proceedings;" that no money whatever, and no part of the sum of money found by the jury in favor of Harrison, had ever been paid into the registry of the court or paid or tendered to Harrison; and that since the date of the verdict none of the cleared land included in the tract sought to be condemned had been planted in growing crops, and the failure to plant the crops was without knowledge or acquiescence of the State Highway Department. The condemnation suit was filed on June 12, 1934. The verdict in that suit was returned on November 22, 1934, and judgment was entered on that verdict on November 23, 1934. The agreed statement of facts in the mandamus proceeding is dated February 21, 1936. On March 12, 1936, the court entered an order denying a mandamus absolute, to which Harrison excepted. From recitals appearing in the court's order it appears that the condemnation proceeding was instituted for the purpose of procuring a right of way for a public road through lands of Harrison, and that the condemnors did not sue out writ of error to the Supreme Court from the judgment rendered in that proceeding.

The issues in this case may be condensed into two questions: First, is the finding and judgment of the superior court a valid judgment? Second, can it be enforced as against the State Highway Department by mandamus? To deny that the judgment is valid is to assert that under no circumstances can the State Highway Department be subjected to suit; and to go even further and say that where the department itself instituted the suit, its acts

are without consequence or other effect than perhaps needlessly to embarrass owners of land through which the highway department may pass surveying pretended routes of highway and trifling with the anticipations of the landowner, whether they be pleasant or unpleasant. The State Highway Department sought to condemn this land by the exercise of the sovereign right of eminent domain. No exercise of power can be more sweeping or outstanding as well as thoroughly drastic. This is the power included in the act of 1914 (cited supra), and it is delegated to the State Highway Department to be exercised by it as an agency of the State of Georgia. As to this sovereign right the constitution of Georgia declares that private property shall not be taken or damaged for public purposes until compensation has been first paid. Art. 1, sec. 3, par. 1. Code, § 2-301. This voice of the constitution is so paramount to any mere legislative enactment that for many years in this State legislation upon this subject was considered as a matter of supererogation. The constitutional provision was held times without number to be self-executing; and where property was condemned to public servitude, the owner could recover the value of his land and any consequential damages in a mere action of debt brought in the superior court of the county where the land was located. It can not be imagined that the purpose of the legislature in passing the act of 1894 (Code, §§ 36-202–36-313) for the benefit of certain corporations, and the broad act of 1914, supra, which included a State agency, was to put the great State of Georgia to using the highway department as its hand in equivocal and disreputable positions. As we construe the legislation of 1914, it was not its intention to trifle with the rights of its citizens, to sacrifice even their slightest interests, or to diminish in any degree their constitutional right to be paid for property which might be taken from them for the public use. From the record in this case it appears that the highway department desired a strip of land 100 feet wide, upon which to construct a highway; and for some reason (which does not appear) the department wished five acres in addition in a block beside the highway, making altogether more than fifteen acres of land. The highway department and Harrison could not agree as to the value of this land; and three assessors were appointed, whose impartiality, intelligence, and integrity has not been questioned. They assessed the value of the land at $2000,

the consequential benefits at $500, and the consequential damages at $1500, thus finding $3000 in favor of Harrison. From this record it must be assumed that the land taken was in front of a larger body of land in the rear of that tract, also belonging to Harrison. The highway department, being dissatisfied with the return of the assessors, appealed to the superior court, where, after a trial, to which no exception was taken, the jury returned a verdict for $2232.50 in favor of Harrison, and judgment was entered on November 23, 1934. Of course the highway department as such has no tangible property subject to levy, but it handles millions of dollars annually. Harrison has a right to the money represented by the judgment in his favor; and "where there is a right there is a remedy." Upon the latter theory this suit was based.

In a large number of cases in this State the right to be paid for property condemned for public uses has been maintained by injunction restraining the condemnor from using the land until payment has been made, though an intervening judgment for the value of the property was necessary to finally effect complete relief. In the absence of any other remedy, mandamus is an available remedy in the circumstances of this case. "Where the right to damages has accrued, mandamus would lie against the proper persons to compel them to proceed and have the damages assessed." 2 Lewis on Eminent Domain, § 879(614). In this case the superior court of Macon County had jurisdiction of the matter in the rendition of the judgment fixing the damages at $2232.50; and it is a settled principle that "if the tribunal which made the award had jurisdiction, mere errors or irregularities will not be a defense to a petition for mandamus to pay the award." 2 Lewis, Em. Dom. § 878(613), citing Crise v. Auditor, 17 Ark. 572; Higgins v. Chicago, 18 Ill. 276; People v. Township Board, 2 Mich. 187; People v. Lowell, 9 Mich. 144; People v. Supervisors of St. Lawrence, 5 Cow. 292; People v. Fitch, 147 N. Y. 355 (41 N. E. 695); State v. Wilson, 17 Wis. 687. "If the tribunal did not have jurisdiction, the award is a nullity and mandamus will not lie to enforce its payment." 2 Lewis, Em. Dom. § 878(613). We can not hold in this case that the assessment and award and the subsequent verdict of the jury in the superior court is or was a mere nullity. On the contrary, the proceedings seem to have been

regular in every respect and in conformity to the provisions of the act of 1914. In the well-considered case of Budd v. New Jersey Railroad &c. Co., 14 N. J. L. 467, the Supreme Court directed a mandamus to be issued, even though the court of common pleas had ordered all the proceedings on appeal to be stayed until certiorari between the parties should be decided. In delivering the opinion of the court, Chief Justice Hornblower said: "By the sixth section of the charter of the New Jersey Railroad and Transportation Company it is provided, that if the owner of any land taken by the company shall feel himself aggrieved by the decision of the commissioners appointed to assess the damages in his case, he may appeal to the next court of common pleas of the county in which the land is situated. Upon such appeal that court, with or without the intervention of a jury, as the parties shall elect, is to review and settle the amount of damages in a summary way. Joseph Budd, feeling aggrieved by the decision of the commissioners in his case, did make his appeal in due season to the court of common pleas of Bergen County. At the request of one of the parties, a trial by jury was ordered by the court. The cause was noticed for trial at the June term, and the appellant attended with his counsel and witnesses, ready for trial; but instead of proceeding to try the appeal, the court, on motion in behalf of defendants, ordered that all proceedings on the appeal should be stayed until a certiorari between the parties, which had been directed to the clerk of Bergen County, should be decided in this court; thus indefinitely postponing the trial, or, in other words, refusing to proceed according to law. For doing so the court assign no reason; but in effect say they will not proceed in the case until a certain event happens; which in fact may never happen. This amounts to a plain denial of justice. . . Let a mandamus be issued as prayed for."

It is settled that, in the absence of any other remedy, mandamus is an available remedy in the circumstances of this case. Harrison's right in his judgment became a vested right. The highway department pursued the litigation to judgment, when it might have dismissed the condemnation proceedings. Nisbet, J., speaking for the court in Parham v. Justices, 9 Ga. 341, 344, said: "Our doctrine farther is, however, that the property of the citizen can not be taken for any purpose of public utility or convenience, un-

less the law which appropriates it makes provision for a just compensation to the proprietor. This is true at common law, according to the lex terræ recognized and affirmed by magna charta, and it is true by the special ordainment of the constitution of the United States." In *Central of Georgia Railway Co.* v. *Thomas,* 167 *Ga.* 110 (144 S. E. 739) this court held that under the law and the facts the court did not err in granting the injunction as prayed. The Central of Georgia Railway Company gave notice to Mrs. Ettie L. Thomas, and to an insurance company which was the holder of a security deed, that it would proceed to condemn certain lands of Mrs. Thomas, fully described, for the purpose of using said lands for the building of a wye and other railroad purposes, the company and Mrs. Thomas having failed to agree upon the value of the property. Two of the assessors fixed the value of the property at $2500, the other assessor declining to sign the award. Within ten days from the making of the award, and before its filing with the clerk of the superior court, the company by written order dismissed the entire proceeding, and then filed the papers with the clerk of the superior court. Subsequently the company, without ever having taken possession of the land sought to be condemned, gave notice to Mrs. Thomas and the insurance company that it had selected James W. Smith to meet with an assessor selected by the owner on July 11, 1927, for the purpose of assessing the amount of damage for the taking and use of said land for railroad purposes. This notice was served on Mrs. Thomas, the owner, and on the insurance company. The property-owner declined to appoint an assessor under this notice. She procured an order restraining the railway company from proceeding with the condemnation until a hearing for injunction on July 23, 1927, on which date the judge continued the injunction restraining the company from further proceeding with the second condemnation proceeding. In its bill of exceptions the company insisted, among other things, "(d) That the right of the plaintiffs to compensation for said land did not vest until condemnor had paid the assessed value of the land, or had taken possession of the same. (e) That it had the right, after a dismissal of the former condemnation proceeding, to renew its condemnation proceeding of the same land for the same purposes. (f) That said petitioners had a legal remedy for the protection of any rights

they may have had, and therefore were not entitled to the equitable relief sought."

In delivering the opinion of the court Mr. Presiding Justice Beck said: "In section 5206 of the Civil Code it is provided that 'All corporations or persons authorized to take or damage private property for public purposes shall proceed as herein set forth.' And then follow other provisions as to payment or tender of compensation; and if the parties can not agree upon the compensation to be paid, other sections provide for notice, hearing, evidence, and assessment of value and of damages; for the finding of the assessors, etc.; then for the filing and record of the award. These sections are immediately followed by provisions for an appeal, final judgment, etc. In the present case no appeal was entered, but within ten days a dismissal of the proceedings was entered by the condemnor upon the papers in the case; and afterwards notice was given under section 5209 of the Code, and was served upon the owner. . . It is insisted by counsel for the plaintiff in error that 'A proceeding to condemn property for public use is not in the nature of a contract between the owner and the condemning party; and until the property is actually taken and compensation is made or provided, the power of the condemning party over the matter is not exhausted,'—and cases are cited to sustain this contention. And further, that 'Until the property is actually taken possession of or paid for, the landowner has no vested interest.' And the plaintiff in error argues and insists that it has the right to institute the new proceedings in this case. In one sense, there was in this case at the time of the dismissal possibly no vested right in the landowner in the ordinary sense in which that term is used; and the condemnor, under the various authorities, might abandon the proceedings and give notice of such abandonment to the landowner, and thereby prevent the collection of the amount awarded by the assessors. But in another sense, the landowner did acquire, if not a vested right in the amount of the award or judgment, a right to set up the finding of the award as an estoppel, in the nature of estoppel by judgment, against a second proceeding. Equity certainly will not tolerate that a condemnor, who has been vested with the power of eminent domain, vested with that high right that the needs of the public may be met in certain cases, shall, after having had the benefit of a trial

before assessors, take the chances of getting a lower award, in a second proceeding, by dismissing the first proceeding and refusing to enter the appeal, as the statute provides, in case he is not satisfied with the amount awarded. To allow the condemnor to do this, that is, dismiss his first proceeding after the award or judgment, would be giving him an inequitable advantage over the owner of the land—a clear and undeniable advantage in many cases. In the case of Northern Pac. Ry. Co. v. Georgetown, 50 Wash. 580 (97 Pac. 659, 660), it was said: 'What would be thought of the attempt of a railroad company to abandon a condemnation proceeding through a citizen's farm because the award was large, and commence another condemnation proceeding with the boundary line of the second six inches from the boundary line of the first? Such proceeding would not be tolerated for a moment, and, for the reason that the law is no respecter of persons, it should not be tolerated when the railroad company's property is sought to be appropriated.' See also 20 C. J. 1077-1079, and cit. These cases are not all in accord. In fact the majority of them may be adverse to the conclusion which we have reached in this case. But we can not reach any other conclusion than that reached by the trial judge in this case. If the doctrine insisted upon by counsel for plaintiff in error—and which we admit they have supported by the citation of numerous authorities—were held by us to be sound, it would place in the hands of any corporation entitled to exercise the power of eminent domain the power to harrass and oppress the owner of land; and we are not willing so to construe the statute applicable to this case as to put it in the power of any one to oppress another."

In the act of 1914, supra, the power of condemnation was extended to a department of the State government, the State Highway Department, while section 5206 of the Code of 1910 (Code of 1933, § 36-301), quoted by Mr. Justice Beck, was copied from the act of 1894; but in the act of 1914 it is expressly provided that the act of 1894 is not repealed or superseded. In the *Thomas* case, supra, the case of *Central Georgia Power Co. v. Nolan,* 135 *Ga.* 443 (69 S. E. 561), was examined and distinguished, as also was *Georgia Railway & Power Co. v. Mooney,* 147 *Ga.* 212 (93 S. E. 206). Mr. Presiding Justice Beck concluded the opinion with this language, in which the entire court including this writer con-

curred: "We are of the opinion that this is a case where a court of equity should have interfered to protect the landowner in her rights." Nothing said in the present opinion conflicts in any way with the decision in *Tounsel* v. *State Highway Department*, 180 *Ga.* 112 (178 S. E. 285). In that case the injured person was an employee of a contractor working under the direct supervision of an engineer of the State Highway Department. The fact that the contract provided that said work should "be done in accordance with the laws of the State of Georgia, under the direct supervision and to the entire satisfaction of the State Highway Department," and that it was alleged that the engineer of the State Highway Department had knowledge of improper and defective material used in the construction of the bridge and the negligent construction thereof, and did not warn the person injured of the hidden danger in said bridge that was being constructed, did not render the State Highway Department liable for damages. The *Tounsel* case was an effort to sue the highway department directly. The case at bar is one in which the highway department itself brought the action to condemn Harrison's land for the purpose of a highway, etc. The action upon appeal reached its fruition in a verdict in Harrison's favor, finding $2232.50 as the value of the land which the highway department asked to condemn. The present case is a petition for mandamus to enforce the collection of the verdict and judgment rendered in behalf of Harrison. As to this it was said in the *Tounsel* case: "We think that there can be no question that a suit may be brought against the State Highway Department by mandamus, injunction, and the like. The question before us does not ask whether the State Highway Department may be sued where they have taken private property for public use without just compensation first paid, as is guaranteed by article 1, section 3, paragraph 1, of the constitution of the State of Georgia. In that connection, however, we note" that in *Millwood* v. *DeKalb County*, 106 *Ga.* 743 (32 S. E. 577): " 'The violation by a county of a constitutional right of the citizen must by necessary implication raise a cause of action in favor of the citizen against the county, unless some means of redress other than suit has been afforded by the legislature.' "

From the length of time which has elapsed since the rendition of the judgment in favor of the plaintiff in this case, it might be

inferred that the highway department has abandoned its desire to appropriate the land which it had condemned, rather than pay the price necessary to complete the title of the highway department to this realty. But this is not a necessary inference. It may also be inferred that the highway department hopes by long delay to obtain a reduction in the price of the land, the title to which being so beclouded by the condemnation proceedings that Harrison could not well sell his property to an advantage until it is definitely decided that it can not be taken from him or his grantee. What more appropriate remedy than mandamus can be suggested to stop the condemnor from swimming at will in a sea of doubt, and how long must the state of doubt continue? On the grant of a mandamus nisi the court has full control of the case, and the judge can exercise his discretion as to how broad or how narrow the extent to which a mandamus absolute shall go. But we can not concur in the judgment of the lower court as written. The authorities as to when and how the right to discontinue the condemnation proceedings may be exercised, as to the vested right of the condemnee in a judgment appraising the value of the land sought to be condemned, and the different methods of procedure followed in different jurisdictions, are elaborately dealt with in 20 C. J. 1065-1085, §§ 450 et seq. It will be seen from an examination of a large number of citations that the various rules to which we have referred (many of them adopted in view of statute peculiar to the jurisdiction) are very variant and conflicting. But we must give effect to the rules which are well settled in the jurisprudence of Georgia, which will not hamper the right of condemnors to take and appropriate private property to an essentially necessary public use and for such beneficial purposes as the construction of good highways in this State, and yet which will protect and safeguard the rights of the owners of even the humblest homes in this State from being coerced into surrendering them and thereby being compelled to contribute far more than their fair share to the construction of the beneficial public improvement.

*Judgment reversed. All the Justices concur, except Atkinson, J., who dissents.*