## MOORE *vs.* CITY OF ATLANTA.

[This case was brought forward from the last term, under §4271 (a) of the Code.]

1. The act of the legislature which gave to a land owner in Atlanta the right to have a permanent grade, required, as a prerequisite to its value as vesting a right in him, that it be filed for record. Having failed so to do, he could neither recover damages, under that act, from the city, resulting to his lot from a change in the grade of the sidewalk, nor enjoin the municipal authorities from making such change.
2. Ignorance of the law and inadvertence do not jointly or severally commend a suitor who seeks relief in a court of law or equity; never, where the strong remedy of injunction is sought.
3. If any owner of property be damaged by the grading of a street so as to lessen the pecuniary value of such property, he may recover damages for such injury to his freehold. That damage will be measured by the decrease in the actual value of the property. Increase of value resulting from such improvements may be set off against the damages proved, the right of recovery turning in each

case on the decreased pecuniary or market value of the property caused by the grade.

4. The grading of streets should not be stopped, and extensive municipal improvements prevented by injunction, because of damage which would result to the owner of a lot bordering on the street.

(*a.*) There is a broad distinction between cases of this character and those in which possession of, and dominion over, private property is taken for public use, like *Chambers vs. Cincinnati and Georgia Railroad*, 69 *Ga.*, 320.

5. On an application for an injunction, questions of fact are for the chancellor.

(*a.*) If the authorities of the city were using their official power in behalf of the individual profit of themselves or others in collusion with them, at the expense and to the damage of other citizens, the courts would interfere to stop such conduct. But as the charge would involve a deep degree of moral turpitude, the proof should be correspondingly strong and certain.

6. It is evident that the authorities are moving to secure the change of grade.

March 27, 1883.

Municipal    Corporations.    Damages.    Constitutional Law. Streets. Injunction. Before Judge HAMMOND. Fulton Superior Court. September Term, 1882.

Reported in the decision.

CANDLER & THOMSON, for plaintiff in error.

W. T. NEWMAN, for defendant.

JACKSON, Chief Justice.

This bill was brought by the complainant against the city of Atlanta to enjoin the municipal authorities from grading a street in front of the residence of the complainant, on the ground that the grade had been fixed by the city some years ago; that complainant had neglected to record it pursuant to law, but had acted upon it as fixed; had planted shade trees on the sidewalk, which had become of great value, and would be destroyed if the new grade proposed was carried out; that it was projected now

in the interest of certain persons owning property in the neighborhood; that there was really no necessity for it, and that its result would work irreparable injury and damage to the complainant. The injunction was refused by the chancellor, and the complainant excepted.

We have held up this case for some time, with a view to look closely into the bearing which the constitution of 1877, and the decision of this court thereunder in the case of *The City of Atlanta vs. Green,* made at the September term, 1881, and not yet reported,* might have on the law of the case. Outside of that bearing, the case would have given us comparatively little trouble.

1. The act of the general assembly which gave complainant the right to have a permanent grade, made, as a prerequisite to it value as vesting a right in him, that it be filed for record. Acts of 1871–2, p. 301. Complainant admits that he did not record or file the grade which he procured to be given him as permanent in 1873, and therefore acquired no rights under it; nor could he, under that act, recover damages from the city, much less enjoin it from grading the streets, so far as that act confers rights upon him.

2. Nor does complainant give any reason for failure to record the permanent grade, alleged to have been given him by Mr. Bass, the city engineer in 1873; but "from ignorance or inadvertence," it was not filed for record. Ignorance of the law and inadvertence, both or either, do not commend a complainant who seeks relief in a court of law or equity; never in a court of equity, where the strong arm of injunction, which courts of equity alone can use, is invoked by the suitor.

3. Therefore the rights of complainant must rest on the constitutional provision of the convention of 1877. That provision is that, "Private property shall not be taken or damaged for public purposes, without just and adequate compensation being first paid." Art. 1, sec. 3, par. 1; Code, §5024.

In the case of *The City of Atlanta vs. Green, supra,* it

*67 *Ga* , 386.

was held that this constitutional provision was applicable to cases of injury or damage to property caused by grading the streets, without reference to the point whether or not the act of 1871, in regard to permanent grades previously granted and recorded, was complied with, and the effect of not recording. It was ruled there distinctly, and it is now well settled law in this state, that if any owner of property be damaged by the grading of a street, so as to lessen the pecuniary value of his property, he may recover damages for such injury to his freehold. That damage will be measured by the decrease in the actual value of his property. If the value pecuniarily be not decreased, he can recover nothing. If it would have been decreased in value as a mere residence, without regard to the improvement of access made by the ·grade of the street, and yet this improvement and the increased value thereby produced equaled the inconvenience or discomfort of the home as a mere residence, then the one could be set off against the other, and no recovery could be had. In other words, the right of recovery would turn in each case on the diminution in the pecuniary or market value of the property caused by the grade.

Weighed in these scales, how will the case at bar stand on the mere question of damage? Will the complainant's property be decreased in value, and if so, how much? That much, little or large, he will be entitled to recover at law under the ruling in the case of *Atlanta vs. Green*, before cited.

4. But the stoppage of all the improvements of the city by the stern writ of injunction is another and vastly more important question. Has he or any other citizen the right absolutely to stop the entire system of grades of a whole street, or of two streets, because his property will be damaged if the contemplated improvement, in the judgment of the authorities, be carried into effect? Is it not better that one man's property be incidentally damaged than that the city authorities be absolutely prohibited from

grading the streets? Is it not more in harmony with all law and reason that this be so, especially when whatever damage the one man sustains the municipality will be made to pay? It might damage the one man one thousand dollars to make the contemplated grade; it might damage the march of improvement in a great and growing city millions of money not to make it. It is, therefore, more equitable,—better, in every sense better,—to pay the one citizen his comparatively small damage, than to impede the course of the city at the expense of millions, which the one citizen could not, and ought not to be asked to, pay.

We do not mean to say that in this case the march of improvement would be so stopped and at such injury to the city. But the principle would embrace all cases where the private property of any one citizen would be damaged by a contemplated grade of the streets by him. He could also arrest and enjoin the city, and the result would be disastrous. An injunction granted to one must, under like circumstances, be granted to all others, and the wheels of the municipal government, so far as improvement of streets is concerned, would be most effectually blocked.

Hence, the supreme court of Illinois, which was cited as authority in *The City of Atlanta vs. Green*, while it rules that, under a similar constitutional provision to ours, damages could be recovered also rules that an injunction ought not to be granted to stop the operations of the municipal government and clog its wheels. 75 Ill., 74.

It must be observed, too, that this is not in that class of cases where private property is taken possession of, and dominion over, for public use; but the city is grading its own sidewalks. It is upon its own soil, and the damage is only consequential. The distinction is broad, and is made in the case from the 75th Illinois, *supra.*

It distinguishes this case, also, from *Chambers vs. The Cincinnati and Georgia Railroad Company,* decided at the September term, 1882,* not yet reported, and cited by plaintiff in error. There the actual seizure of the property

* 69 *Ga*, 320.

of the plaintiff was about to be made by the railroad, and the court stopped the act of seizure until compensation was made. In that class of cases, too, a mode is provided for assessing damages before the right of way can be had,—in the class of cases before us, there is none.

5. Questions of fact here, as in all applications for injunction, are for the chancellor below. We do not pass upon them unless his discretion be abused.

In this case, Mr. English, the then mayor of the city, and Mr. Rice, a contractor, are implicated by charges in the bill as urging this grade for individual profit and emolument; but they deny on affidavit all intimations of the sort. The chancellor could hardly do otherwise than accept this explicit denial, as there is no positive evidence to the contrary. The intimations in the bill stand alone and unsupported in the record. If the authorities of the city were using their official power in behalf of individual profit of their own, or of others in collusion with them, at the expense and to the damage of other citizens, the courts would soon find means to put a stop to all such conduct; but as the charge would involve a deep degree of moral turpitude, the proof should be correspondingly strong and certain.

6. We see nothing in the point in regard to the action of council; their order to the commissioners of streets, and subsequent reference to a committee and its non-action. It is evident that the city is moving in behalf of this grade with all its might. It defends the bill by its attorney; it surveys and fixes it by its engineer, and there is no doubt that all its authorities are moving to secure it.

On a careful consideration of the whole case, we see no course for this court, under the principles of equity applicable to the facts, but to affirm the denial of the writ of injunction.

Judgment affirmed.