CITY OF ATLANTA *v.* AUSTELL, executor.

ATKINSON, J.   1. In order to condemn property for public purposes, it is necessary, preliminary to the commencement of the proceeding, for the condemnor to make an effort to agree with the owner of the property upon a price to be paid for the land. *Bridwell* v. *Gate City Terminal Co.,* 127 *Ga.* 520 (8), 535 (56 S. E. 624, 10 L. R. A. (N. S.) 909); Civil Code, § 5207.

2. An effort was made by a city to condemn certain real estate for the purpose of widening a street. The property had been devised by the terms of a will. The condemnation proceedings were upon the basis that the property had been bequeathed to a person who was nominated executor, and to others. The person appointed by the city to agree with the owners upon the value of the property addressed a letter to the person who was executor of the will, and who was also a legatee, as follows: "It is the intention of the city to agree with you, if possible, as to the price to be paid, before instituting condemnation proceedings in court. I understand that you own a one-twenty-seventh interest in this property, subject to an estate for the life of your mother, and that you are one of the executors of the estate of Alfred Austell, deceased. The city asks that you make an offer as to what you will take for your interest. Kindly write me what price you would be willing to accept for the interest you hold." *Held,* that this letter is to be construed as a proposition to the addressee personally, and not to him as executor in his representative capacity, and that it did not require the judge, on an interlocutory hearing for injunction, to hold that the condemnor had made an effort to purchase the easement before institution of the condemnation proceedings.

3. Under a proper construction of the will, the executor had sufficient interest in his representative capacity under the will to maintain an action against the city to enjoin an illegal proceeding instituted by the city, seeking to condemn for public use the land bequeathed by the will.

4. Certain evidence offered by the defendant was properly excluded on objection that it was irrelevant.

5. Under the pleadings and the evidence, this was an effort by the city to condemn certain land for the purpose of widening one of the streets. The land had been bequeathed by a testator, and the city was seeking to condemn the interest therein of the widow, who had renounced a devise in her favor and to whom dower had been set apart in the property, and also the interests of others to whom the property should go under the terms of the will. After the condemnation proceedings had been commenced, the sole surviving executor filed an equitable pe-

tition to enjoin the city from proceeding with the condemnation, on the ground that the proceedings were not against him in his representative capacity, and that no attempt had been made by the city, preliminary to the condemnation proceedings, to agree with him in his representative capacity upon a price to be paid for the property sought to be taken. *Held,* that under the pleadings and the evidence there was no error in granting the injunction.

*Judgment affirmed. All the Justices concur.*
FEBRUARY 14, 1917.

Injunction.    Before Judge Pendleton.    Fulton superior court. May 3, 1916.

In 1881 Alfred Austell died leaving a will which contained, among others, the following items: "Item 2. It is my will and desire, and I hereby devise and direct, that my executors hereinafter named shall not sell, during the life of my said wife, any of 'Trout House' lot, on the corner of Decatur and Pryor Streets in said City of Atlanta, fronting on Decatur Street one hundred feet, more or less, and extending back at right angles with Decatur Street, and on Pryor Street, to Line Street; but they may build, out of any funds that may come into their hands, if they deem it best, other storehouses on the part of said lot adjoining the building known as the Austell Corner. I direct my said executors to collect the rents of the storehouses, or other houses, as may be on said 'Trout House' lot, and, out of the rents so collected, that they pay my said wife the sum of two thousand dollars, payable in equal quarterly payments, for each and every year of her natural life, whether she marries again or not. And my executors are directed to take the receipt for the same from herself alone, and to pay it to no other person. My executors are further directed, after paying my said wife the sum of money aforesaid, to divide the balance equally between my said children, and after the death of my said wife to sell the said storehouses and lot and divide the proceeds of such sale among my children, share and share alike, the child or children of any deceased child of mine to take the share of their deceased parent." "Item 4. The provisions hereinbefore made by me for my beloved wife being ample for her support, I hereby declare that the bequests hereinbefore made to her are in lieu of dower, or right of dower, of, in, or to any real estate of which I may die seized, and that it is my will that she shall inherit or get no part of my estate except what is specifically given to her by this will." "Item 10. In any item

of my will, where a division of property is directed to be made between my children, I hereby declare it to be my will and desire that if any of my children should be dead at the time such division is to be made, leaving any child or children surviving them, that such surviving child or children shall take the portion of their deceased parent. And in the event any of my children shall die before the division of any part or the whole of my estate, as provided for in this my will, leaving no issue or surviving children, then it is my will and desire that the portion of my estate that would have otherwise gone to such deceased child or children shall be divided between my other surviving child or children, share and share alike." The will was duly probated, and the three executors therein named qualified. Thereafter two of the executors died, leaving the remaining one as sole surviving executor. The widow elected to take dower in lieu of the bequest left her under the will, and dower was duly set apart to her, which included, among others, the whole of the property described in item two of the will. On December 7, 1915, the widow was still living, as were also two sons and one daughter. One of the daughters died after the testator's death, leaving no children. One of the sons had children in esse, and the other son was unmarried and without children. On the date last mentioned the City of Atlanta served a notice upon the widow and each of the sons and the daughter of the testator, and certain children of the son having children, and certain tenants occupying the property, of its intention to condemn a portion of the property referred to in the second item of the will, for the purpose of widening a street of the city in such manner as to appropriate a part of the property. The evidence as to an effort on the part of the city to agree with the owners of the property upon the price to be paid therefor was the testimony of W. W. Austell, who was the sole surviving executor, to the effect that there had been an offer made to him personally, but no offer made to him in his representative capacity to agree upon a price. And a certain letter written by W. S. Dillon, addressed: "Mr. W. W. Austell, 108 Juniper St., Atlanta, Ga.," which contained the following: "It is the intention of the city to agree with you, if possible, as to the price to be paid, before instituting condemnation proceedings in court. I understand that you own a one-twenty-seventh interest in this property, subject to an estate for the life

of your mother, and that you are one of the executors of the estate of Alfred Austell, deceased. The city asks that you make an offer as to what you will take for your interest. Kindly write me what price you would be willing to accept for the interest you hold." After the service of the notice of intention to condemn the property, W. W. Austell as executor instituted an action against the city to enjoin the condemnation proceedings, which contained allegations substantially as above set forth, and others to the following effect: (a) Upon the death of the daughter of the testator above mentioned, her interest, under the will, in the property in question reverted to the estate, by reason of her having died childless. (b) None of the children or grandchildren of the testator has any vested legal title in the property, and under the terms of the will the property is to be sold by the executor after the death of the widow, and the proceeds realized from the sale to be distributed in the way provided for by the will, and the shares of those who may die childless revert to the survivors or their children; and consequently such interests are contingent and relate to the estate itself and to the proceeds of the sale of the property which was required to be made by the executor, and the death of the widow. (c) In his representative capacity the executor is vested with the power and duty to sell all of the property and convey title thereto and distribute the proceeds thereto when thus authorized. (d) In not giving petitioner notice in his representative capacity, and in not attempting to agree with him in a representative capacity as to the price to be paid for the land, the city had failed to comply with the provision of the statute requisite to the condemnation of property for public purposes.

J. L. Mayson, S. D. Hewlett, Anderson & Rountree, and Moore & Pomeroy, for plaintiff in error.

Charles T. & Linton C. Hopkins, contra.