## CRUMB *v.* THE STATE.

No. 16710. JULY 12, 1949.

*Daniel Duke,* for plaintiff in error.

*Phillip Sheffield, Solicitor,* and *A. H. Gray,* contra.

ATKINSON, Presiding Justice. (After stating the foregoing facts.) The Code, § 59-106, makes provision for the selection of jurors. In substance it provides that the jury commissioners shall select from the books of the tax receiver "upright and intelligent" men to serve as jurors, and then select from these, not exceeding two-fifths, the most "experienced, intelligent, and upright" to serve as grand jurors.

The accused asserts that over a long period of time Negroes have been purposely and expressly excluded from the jury list solely on account of their race, and that by such systematic and purposeful exclusion he has been deprived of his rights under the "due process" and the "equal protection of the law" clauses in the Fourteenth Amendment of the Constitution of the United States (Code, § 1-815).

In 1880 in the case of Neal *v.* Delaware, 103 U. S. 370, 397 (26 L. ed. 567), the United States Supreme Court held that the exclusion of Negroes from juries solely because of their race denied a Negro defendant in a criminal case the equal protection

of the law required by the Fourteenth Amendment to the Constitution of the United States. It was there said: (p. 394) "that in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race, and no discrimination against them, because of their color. So that we need only inquire whether, upon the showing made by the accused, the court erred in overruling the motions to quash the indictment and the panels of jurors." And then added (p. 397), "The showing thus made, including, as it did, the fact . . that no colored citizen had ever been summoned as a juror, . . although its colored population . . exceeded twenty-six thousand, in a total population of less than one hundred and fifty thousand—presented a prima facie case of denial, by the officers charged with the selection of grand and petit jurors, of that equality of protection which has been assured by the Constitution and laws of the United States." The principle there stated has since been reiterated and applied in numerous cases, so many, in fact, that to cite all would be useless enumeration.

While each case must rest upon its particular facts, it might be well briefly to direct attention to some of the more recent cases. In Norris v. Alabama, 294 U. S. 587 (55 Sup. Ct. 579, 79 L. ed. 1074), where, on a motion to quash the trial venire in Morgan County, it was shown that approximately 18 percent of the population were Negroes, that for a long period no Negroes were called for jury service, that there were Negroes qualified for jury service, the court held that a prima facie case was established, and was not overcome by testimony of the jury commissioners to the effect that they knew of no Negro who was qualified for jury service under the terms of the Alabama law. Another case in many respects similar is Pierre v. Louisiana, 306 U. S. 354 (59 Sup. Ct. 536, 83 L. ed. 757). In Hill v. Texas, 316 U. S. 400 (62 Sup. Ct. 1159, 86 L. ed. 1559), upon a motion to quash the indictment because Negroes were, and had been for a long period of time, excluded from the grand jury, that approximately 17 percent of the population of Dallas County were Negroes, and where the accused showed there were a large number of Negroes who met some of the statutory requirements for jury service, but omitted to establish that they had all of the tests, the court held that this established a prima facie case,

which was not overcome by testimony of the jury commissioners to the effect that they were not omitted by reason of being Negroes, but because they did not know any Negro qualified to serve, and made no investigation to ascertain whether there were any qualified for grand jury service. In the more recent case of Patton v. Mississippi, 332 U. S. 463 (68 Sup. Ct. 184, 92 L. ed. 96), where it was shown that approximately 33 percent of the adult population of Lauderdale County were Negroes, and that no Negro had served on a grand or petit jury for a period of thirty years, created a strong showing that during that period Negroes were systematically excluded from jury service because of race, and where such a showing was made it became the duty of the State to justify such an exclusion as having been brought about for some reason other than racial discrimination. The State produced no evidence to show that there were no Negroes in the county qualified for jury service. The court said: "We hold that the State wholly failed to meet the very strong evidence of purposeful racial discrimination made out by the petitioner upon the uncontradicted showing that for thirty years or more no Negro had served as a juror in the criminal courts of Lauderdale County. When a jury selection plan, whatever it is, operates in such way as always to result in the complete and long-continued exclusion of any representative at all from a large group of Negroes, or any other racial group, indictments and verdicts returned against them by juries thus selected cannot stand."

These rulings of the United States Supreme Court speak for themselves. The facts in the instant case show that more than 50 percent of the population of Early County are Negroes, that approximately 50 percent of the males over 21 years of age are Negroes, and that approximately 33 percent of those upon the tax digest, from which the jurors are selected, are Negroes. When considered in connection with the further testimony that no Negroes were on the jury list, and none had served for a period of thirty or forty years, and no showing by the State to justify such exclusion, it becomes apparent, under the foregoing decisions of the United States Supreme Court, that the accused has been denied his rights under the "equal protection of the law" clause of the Fourteenth Amendment of the Constitution of the United States. Code, § 1-815. A construction of a clause of the United

States Constitution having been invoked, the interpretation given thereto by the United States Supreme Court becomes binding authority upon this court. *Wrought Iron Co. v. Johnson*, 84 *Ga.* 754 (11 S. E. 233); *Gernatt v. Huiet*, 192 *Ga.* 729 (16 S. E. 2d, 587); *Mason & Dixon Lines Inc. v. Odom*, 193 *Ga.* 471 (18 S. E. 2d, 841). And whatever may be the individual opinion of the members of this court as to the correctness, soundness, or wisdom of these decisions, it becomes our duty to yield thereto, just as the other courts of this State must accept and be controlled by the decisions and mandates of this court. This being a government by law and not by men, the jury commissioners in their official conduct are bound by the foregoing rulings of the Supreme Court of the United States, notwithstanding any personal opinion, hereditary instinct, natural impulse, or geographical tradition to the contrary.

*Judgment reversed. All the Justices concur.*