19906. WOODSIDE *et al. v.* CITY OF ATLANTA *et al.*

ARGUED NOVEMBER 13, 1957—DECIDED MARCH 7, 1958— REHEARING DENIED MARCH 21, 1958.

*Houston White*, for plaintiffs in error.

*Eugene Cook, Attorney-General, Paul Miller, E. J. Summerour, Assistant Attorneys-General, John E. Hogg, Deputy Assistant Attorney-General, Harold Sheats*, for parties at interest, not parties to record.

*J. C. Savage, J. M. B. Bloodworth, Newell Edenfield, Henry L. Bowden, Ferrin Y. Matthews, Robert S. Wiggins, Martin McFarland, Edwin L. Sterne, Mitchell, Clarke & Anderson, Ben F. Johnson, Jr., Deputy Assistant Attorney-General*, contra.

CANDLER, Justice. Pursuant to the provisions of Chapter 36-11 of the Code of 1933, as amended by an act which the legislature passed in 1938 (Ga. L. 1937-38, Ex. Sess., p. 251), the City of Atlanta filed a proceeding in rem to condemn certain realty, alleging that acquisition of it was necessary for the construction

of the North-South Expressway from Baker Street to Memorial Drive. Among those named as defendants were John J. Woodside, Jr., John J. Woodside Storage Company, Inc., and several other named persons who are described in the petition as lien-claimants to a portion of the proceeds. Assessors were duly selected, and an award was made after the parties had been fully heard. The award as thus made was timely filed with and recorded by the Clerk of the Superior Court of Fulton County. The condemnor, being dissatisfied with the amount of the award and within the time allowed therefor, filed its appeal to a jury in the proper court of Fulton County. Thereafter, John J. Woodside, Jr., and John J. Woodside Storage Co., Inc., filed a motion to dismiss the appeal on the ground that the amount of the assessors' award had not been tendered to them or paid into the registry of the court for their benefit prior to or at the time of filing the appeal, and that such tender or such payment was a condition precedent to the condemnor's right to enter an appeal to a jury. The motion as amended alleges at great length the injury, damage, inconvenience, and loss of substantial property rights which the movants have sustained in consequence of the pending condemnation proceeding against their property, but the amended motion alleges that the condemnor has not taken actual physical possession of the property involved. The amended motion to dismiss the appeal was stricken, and the exception is to that judgment.

■ While in banc and during our consideration of the instant case, a question concerning this court's jurisdiction arose, and that is a question which we must always determine, with or without motion of a party. *Brockett* v. *Maxwell*, 200 *Ga.* 213 (36 S. E. 2d 638). And since the instant case must be transferred to the Court of Appeals for decision if this court does not have jurisdiction of it, we will deal with and dispose of that question first. By article 6, section 2, paragraph 4 of the Constitution of 1945, this court has jurisdiction "in all cases that involve the construction of the Constitution of the State of Georgia or of the United States." Code (Ann.) § 2-3704. The words "construction of the Constitution," etc., as thus employed, contemplate construction where the meaning of some provision of the Constitution is directly in question and doubtful either under

its own terms or under the decisions of this court or the decisions of the Supreme Court of the United States. *Gulf Paving Co.* v. *City of Atlanta*, 149 *Ga.* 114 (99 S. E. 374); *Thompson* v. *State*, 199 *Ga.* 250 (33 S. E. 2d 903), and citations. In the instant case, the motion to dismiss the condemnor's appeal to a jury in the superior court was based squarely on the proposition that payment of the assessors' award of compensation for the property involved was a condition precedent to the condemnor's right to file and prosecute its appeal. To decide that question which is directly presented by the writ of error, we must necessarily construe and from such construction determine the meaning of article 1, section 3, paragraph 1 of the Constitution of this State (Code, Ann., § 2-301), which declares that private property shall not be taken or damaged, for public purposes, until just and adequate compensation for it is first paid to the owner. Does this provision mean only that payment of just and adequate compensation must precede an actual physical taking in toto of the owner's property for a public use, or does it also mean that payment of just and adequate compensation must precede the taking of some substantial right of property which an owner has in his land? So far as we have been able to find, this court has not had for decision a case where that exact question was directly presented, but several decisions rendered by this court do contain language which strongly indicates that our constitutional guarantee of payment before private property can be "taken" for a public use means and is limited to an actual physical taking in toto of the owner's land. Among such cases is *Hurt* v. *City of Atlanta*, 100 *Ga.* 274, 280 (28 S. E. 65), where it was said: "The 'taking' referred to in the constitutional paragraph under consideration means a physical, tangible appropriation of the property of another." That case, however, did not involve the city's right to take private property for public use without first paying the owner just and adequate compensation for it; it was an action brought by Mrs. Hurt in 1893 against the City of Atlanta, to recover damages allegedly sustained by her in consequence of acts which diminished the value of certain realty owned by her, consisting of a lot fronting on Forsyth Street and a building thereon. The nature of her case will be readily apprehended from the following condensed statement of the facts. The city in 1892 had, under express

legislative authority, caused to be constructed longitudinally in Forsyth Street a bridge which spanned a number of railway tracks. The width of the bridge coincided with that of the street and the adjacent sidewalks, and it therefore occupied all of the public thoroughfare upon which Mrs. Hurt's property abutted; but it did not encroach upon her land, and no part of her land or building was actually taken from her. It appeared from the evidence that the erection of the bridge rendered ingress to and egress from her building less convenient than formerly and consequently diminished its rental value; but it also appeared that, independently of all other causes, the market value of the property as a whole was considerably enhanced by and because of the erection of the bridge, and that by making alterations in the building so as to properly adjust it to the bridge, it would, even after allowing for the cost of the needed changes, and taking into account an increase in the value of the land, pay in rents a higher percent on her investment than before. The case resulted in a verdict for the defendant, and this court affirmed a judgment denying her a new trial. The language from the opinion in this case, as quoted above, is, of course, purely obiter dictum, as to when property is "taken" within the meaning of our Constitution, which was not involved. *Austin* v. *Augusta Terminal Ry. Co.*, 108 *Ga.* 671 (34 S. E. 852, 47 L.R.A. 755), is another case which contains language indicating that our constitutional guarantee of payment before private property can be "taken" for a public use means and is limited to an actual physical taking of the owner's property, but that case, like the *Hurt* case, did not involve the question of taking property through an exercise of the right of eminent domain, but it was also an ordinary suit for damages growing out of acts which allegedly diminished the value of the plaintiff's realty; and as pointed out in the *Hurt* case, supra, there is a broad distinction between cases of that character and those where private property is being taken from the owner for a public use. See, in this connection, *Moore* v. *City of Atlanta*, 70 *Ga.* 611. By those two decisions, and by others which could be cited where a similar obiter dictum was used by this court, we think that the meaning of the aforementioned provision of our Constitution, if not already doubtful under its own terms, has been rendered doubtful thereby, and that

jurisdiction of the present case should be entertained by this court for the purpose of determining what our constitutional provision requiring payment of just and adequate compensation to the owner before private property can be taken for a public use actually means. *Crumb* v. *State,* 205 *Ga.* 547 (54 S. E. 2d 639), is a case where this court entertained jurisdiction for the purpose of construing a provision of the Federal Constitution. There the accused was convicted of a misdemeanor, and this court, with all of the Justices concurring, entertained jurisdiction of his case when the only basis for such jurisdiction was a proper construction of the Fourteenth Amendment to the Constitution of the United States. It was Crumb's contention that the clause of the Constitution just referred to did not allow a systematic exclusion of men from jury service because of their race or color. Its analogy to the present case is so complete that no reasonable argument can be offered why a constitutional question sufficient to give us jurisdiction was there raised and that no constitutional question sufficient for that purpose is here presented.

■ There is no merit in the motion to dismiss the writ of error on the ground that it was prematurely sued out. If the trial judge had sustained the motion to dismiss the condemnor's appeal to a jury, his judgment would have been a final disposition of the case, and, under the provisions of Code (Ann.) § 6-701, a judgment of that character may be reviewed by this court on a direct bill of exceptions. *Newton* v. *Roberts,* 163 *Ga.* 135 (135 S. E. 505), and the cases there cited. However, in mandamus and quo warranto cases this court has many times held that the law makes an exception to the general rule permitting a direct bill of exceptions to any decision or judgment which, though not final within itself, would have been a final disposition of the case if it had been rendered as claimed by the plaintiff in error. See *Bridges* v. *Poole,* 176 *Ga.* 500, 506 (168 S. E. 577). But no statute has been called to our attention, and we find none, which makes or purports to make any exception to the general rule laid down by Code (Ann.) § 6-701 in a condemnation case, and the ruling in *Hagans* v. *Excelsior Electric Membership Corp.,* 207 *Ga.* 53 (60 S. E. 2d 162), is not authority for the position of the defendants in error that there is such an exception. In that case it was held that the bill of exceptions had not been prematurely sued

out, and a motion to dismiss it was denied. There, it was again held that a bill of exceptions will lie to any judgment which, if ruled as contended by the plaintiff in error, would have constituted a final determination of the cause. We have examined the cases of *Denham* v. *State Highway Board*, 52 *Ga. App.* 790 (184 S. E. 631), and *Stewart* v. *Board of Commrs. of Echols County*, 66 *Ga. App.* 108 (17 S. E. 2d 203) ; and since we think the rulings there made are directly in conflict with the provisions of Code (Ann.) § 6-701, and for that reason unsound, we decline to follow them. See, in this connection, *Martin* v. *Fulton County*, 213 *Ga.* 761 (101 S. E. 2d 716).

■ As previously pointed out in this opinion, the Constitution of this State emphatically declares that private property cannot be taken for a public use until the owner is first paid just and adequate compensation for it. This provision of the Constitution is so paramount to any mere legislative enactment that for many years legislation respecting its operation was considered unnecessary. *Harrison* v. *State Highway Department*, 183 *Ga.* 290 (188 S. E. 445). This voice of the Constitution is mandatory, and it is elementary that neither the legislature nor the courts have any right to restrict, evade, or violate it in the slightest degree. The taking of private property for a public use is the exercise of a high power, and before such taking can be constitutionally accomplished all prerequisites must be complied with strictly. *Thomas* v. *City of Cairo*, 206 *Ga.* 336 (57 S. E. 2d 192). To comply both in letter and in spirit with this constitutional requirement, payment of just and adequate compensation to the owner must always precede the taking of his property for a public use. So, necessarily, a decision of the case in hand depends on the meaning of the word "taken" as that word is used in the provision of our Constitution with which we are now dealing. The condemnor insists that it means only an actual physical taking in toto of the owner's land for a public use. The condemnees contend that it not only means an actual physical taking of the owner's land, but also means the taking of any substantial right of property which an owner has in his land. The contention of each is supported by some respectable authority, and we must confess that obiter language can be found in some of the decisions of this court which does support both of them.

But our constitutional provision emphatically declares that private property cannot be taken for a public use until the owner thereof is first paid for it, and a holding by this court that some substantial element or some substantial incident or right of property can be so taken from the owner without first paying him for his property would do violence to the provision and defeat the very purpose which the framers of our Constitution had in mind when they placed it in that instrument. The same constitutional provision which prohibits the taking of private property from the owner in toto for a public use until he is first paid for it likewise prohibits the taking of any substantial right which the owner has in his land, it being axiomatic that the whole includes all of its parts. While the Constitution of this State expressly declares that an exercise of the right of eminent domain shall never be abridged (Code, Ann., § 2-2501), it also declares just as emphatically that an exercise of such right never carries with it the power to take private property for any public use without first paying the owner just and adequate compensation for it.

In this case and on May 8, 1957, the condemnor, through its mayor and board of aldermen, decided to take the property here involved for a necessary public use; and, as the record shows, its right to do so is not questioned or challenged by anyone. On May 10, 1957, it filed a proceeding against the property for the purpose of subjecting it to public servitude. On June 28, 1957, assessors, who had been selected in the manner and way provided by law, made an award of compensation for it, and such award was filed with the Clerk of the Superior Court of Fulton County and by him recorded as required by law. The condemnor declined to tender the amount of the award to the owners or to pay it into the registry of the court for their benefit, but filed an appeal to a jury in the Superior Court of Fulton County. Does this amount to a taking of private property for a public use within the meaning of our constitutional provision respecting that subject? We think it does. On its own motion and for the purpose of ascertaining and fixing the amount which it should pay as just and adequate compensation for the property it had decided to take, the condemnor instituted the proceeding which the law supplies for that purpose; and that proceeding, after the property

had been viewed and all interested parties had been fully heard, resulted in an award, fixing compensation for the property, by assessors, whose impartiality, intelligence, and integrity have not been questioned. The assessors' award, which was filed and recorded in the office of the clerk of the superior court as provided by Code § 36-508, is a judgment by a tribunal competent in law to fix the rights and liabilities of the parties to the proceedings with reference to the matters and things involved. *Oliver* v. *Union Point & W.P.R. Co.*, 83 *Ga.* 257 (9 S. E. 1086); *Central Ga. Power Co.* v. *Nolan*, 135 *Ga.* 443 (69 S. E. 561); *Thomas* v. *Central of Ga. Ry. Co.*, 169 *Ga.* 269, 271 (149 S. E. 884); *Georgia Power Co.* v. *Fountain*, 207 *Ga.* 361 (61 S. E. 2d 454); *McGreggor* v. *W. L. Florence Construction Co.*, 208 *Ga.* 176 (65 S. E. 2d 809); *Cable* v. *State Highway Board*, 208 *Ga.* 593 (68 S. E. 2d 564). In the *Oliver* case, supra, p. 262, it was unanimously said: "The three assessors are to be sworn, hear evidence, and then by the concurrence of a majority assess the value and the damages. Their award in writing is to be filed in the office of the clerk of the superior court, and be by him recorded, after which it has the force and effect of a judgment or decree of the superior court." And in the *Cable* case, supra, where all members of the court concurred, and where there was a collateral attack on the validity of the assessors' award, it was held in headnote 2: "If the assessment is irregular or erroneous, it must be vacated and set aside in a direct attack upon the award." As authority for this ruling, the court cited the *Thomas* case, supra, and two other cases decided by this court. And respecting such a judgment, the condemnor cannot dismiss his condemnation proceeding and by such act destroy its legal effect. *Oliver* v. *Union Point & W.P.R. Co.; Central Georgia Power Co.* v. *Nolan; Georgia Power Co.* v. *Fountain;* all supra. Consequently, at that stage of the proceeding "just and adequate" compensation for the property involved was fixed by judgment or decree at the condemnor's instance, and it could no longer excuse its failure to pay for it on the ground that its value was unascertained. At that time it should have tendered to the condemnees the assessed value of the property, or paid it into the registry of the court on their refusal to accept it, and since the recorded award adjudicated value of the property, we hold that

such tender or such payment was a condition precedent to its right of appeal to a jury; it could not at that time refuse to pay the amount awarded for the property and at the same time insist upon its right to take it. Such a position is wholly inconsistent with the constitutional provision that payment of just and adequate compensation must always precede a taking. Code Section 36-104, declares that ". . . the right of eminent domain cannot be exercised without first providing for just compensation to the owner for the interference with his exclusive rights." And "The term 'property' is a very comprehensive one, and is used not only to signify things real and personal owned, but to designate the right of ownership and that which is subject to be owned and enjoyed." *Wayne* v. *Hartridge*, 147 *Ga.* 127, 132 (92 S. E. 937). "The term [property] comprehends not only the thing possessed, but also, in strict legal parlance, means the rights of the owner in relation to land or a thing; the right of a person to possess, use, enjoy, and dispose of it, and the corresponding right to exclude others from the use." 18 Am. Jur. 787, § 156. We do not think anyone could or would seriously contend that a proceeding to condemn land which has been prosecuted to the extent of the present one does not interfere with and greatly restrict the owner's property rights in and to the same and to a large extent deprive him of his right to use and enjoy it; and as the word "taken" is construed in many other jurisdictions, a taking of property for which compensation must be first paid does not require an actual physical taking, but may consist in an interference with the rights of ownership, use and enjoyment, or any other right incident to property. See, in this connection, 29 C.J.S. 917, § 110. In Smith *v.* Erie R. Co., 134 Ohio St. 135, 142 (16 N. E. 2d 310), it was said: "In some of the early cases in this country, the courts, adhering to the conception of property as the thing owned, construed the taking alluded to in state constitutions to be a 'taking altogether,' an appropriation and dispossession of the owner, which deprived him of the corpus of the property and compensation was limited accordingly. The broader view, which now obtains generally, conceives property to be the interest of the owner in the thing owned, and the ownership to afford the owner the rights of use, exclusion and disposition. Under this broad construction there need not be a

physical taking of the property or even dispossession; any substantial interference with the elemental rights growing out of ownership of private property is considered a taking." In the circumstances of this case, and for the reason above stated, the trial judge should have dismissed the condemnor's appeal; it was error not to do so.

*Judgment reversed. All the Justices concur, except Wyatt, P.J., Almand and Mobley, JJ., who dissent.*

HEAD, Justice, concurring. 1. The right of eminent domain is the right of the State to reassert, either temporarily or permanently, dominion over lands within the State. Code § 36-101. The right may be asserted by agencies of the State, or corporate bodies when authorized by law. Code § 36-103. The Constitution provides that the right of eminent domain shall never be abridged or so construed as to prevent the General Assembly from taking property and franchises for public use. Constitution, Art. IV, Sec. II, Par. I (Code, Ann., § 2-2501). There can be no taking of private property for public uses without "just and adequate compensation being first paid." Constitution, Art. I, Sec. III, Par. I (Code, Ann., § 2-301). Neither the State, the Federal Government, nor any corporation exercising the right of eminent domain, can take private property except by "due process of law." Fifth Amendment, Federal Constitution; Georgia Constitution, Art. I, Sec. I, Par. III (Code, Ann. § 2-103).

By act of the General Assembly approved January 13, 1938 (Ga. L. 1937-38, Ex. Sess., pp. 251-255), the provisions of Code Chapter 36-11 were extended to include all persons "exercising the right of eminent domain," which chapter provides for proceedings in rem against the described property sought to be condemned. In the present case the City of Atlanta, having the right so to do (*Marist Society of Georgia v. City of Atlanta*, 212 *Ga.* 115, 90 S. E. 2d 564), filed its petition to condemn "the fee simple title" to described lands of the plaintiffs in error, the condemnees. Assessors were appointed and made an award fixing the amount of compensation to be paid the condemnees. Thereafter the city, without tendering the amount of the award to the condemnees, or paying it into the registry of the court, filed its appeal to a jury. The condemnees filed a motion to dismiss the appeal, wherein it is alleged (in paragraph 36) that the consti-

tutional provisions of the State Constitution heretofore cited require that the amount "of the award of the assessors either be first tendered and paid to said condemnees, or the amount of said award paid into the registry of this court," and that the constitutional provisions cited deny the right of appeal to a jury from the award "without simultaneously therewith or within said ten-day period" allowed for appeal "paying the amount of said award into the registry of this court."

Under the ruling of this court in *Jarvis* v. *State,* 197 *Ga.* 704 (30 S. E. 2d 484), *Franklin* v. *Mobley,* 202 *Ga.* 212 (42 S. E. 2d 755; and *McGill* v. *State of Ga.,* 209 *Ga.* 282 (71 S. E. 2d 548); paragraph 36 of the motion to dismiss made a question for construction of the constitutional requirement for "adequate compensation being first paid." In paragraph 37 of the motion to dismiss, it is contended that, if stated Code sections "be construed to permit" an appeal without the amount of the award being tendered and paid to condemnees or paid into the registry of the court, they are contrary to the "first paid" provision of the Constitution. Having previously invoked a construction of the provision that compensation shall be first paid, it is immaterial whether this contention is meritorious.

2. Since private property may not be taken for public purposes except by "due process of law," and "shall not be taken or damaged for public purposes without just and adequate compensation being first paid," the real question for determination by this court in the present case is whether or not a taking of the property of the condemnees resulted from a filing of the award of the assessors in the office of the clerk of the superior court, as provided by law.

The act of 1914 (Code Ch. 36-11), providing for a condemnation of property in rem, and under which act the city filed its petition, was amended by the act approved January 13, 1938 (Ga. L. 1937-38, Ex. Sess., pp. 251-255); and by the amendment it is provided that Chapters 36-2 to 36-6, providing a method of procedure for the condemnation of private property, are not repealed, but that the acts of 1914 and 1938 are supplementary thereof and thereto. Code § 36-604 provides: "If no appeal be entered within 10 days after the award is filed, or if the persons seeking condemnation shall fail to pay the amount of the award or final

judgment, the clerk shall issue execution upon such award or judgment, which may be levied upon any property of the corporation or person condemning."

Construing this Code section, this court in *Thomas* v. *Central of Ga. Ry. Co.*, 169 *Ga.* 269 (149 S. E. 884), in a full-bench decision, held that, where an award of assessors was made and not paid, and no appeal was filed from such award, it was the duty of the clerk to issue an execution on the award, and that the execution would not be defeated because the condemnor had endorsed an order of dismissal upon its notice given in connection with the condemnation proceedings and upon the award. In the opinion it is said: "It may be true that an award by assessors in such cases is not a judgment rendered by a court, but it is a judgment rendered by a tribunal which is competent to fix the rights and liabilities of the parties to the proceedings with reference to the matters and things involved."

In Code § 36-1111 it is said in part: "It shall be within the power of the court, upon payment of the award or verdict into the registry of the court, to adjudge a condemnation of the title in fee simple, . . ." And in § 36-1113 it is said in part: "After condemnation is had and the fund paid into the registry of the court, the petitioner [condemnor] shall not be concerned with or affected by any subsequent proceedings unless upon appeal from the verdict or award as hereinbefore allowed."

If an award of assessors standing alone is such a judgment as will authorize and support the issuance of an execution for its collection, and is such a determination as will support a judgment by the court that the title is condemned in fee simple, how can it be said that an award of assessors is not a taking of property within the provision of the Constitution requiring that adequate compensation shall be first paid? Our statutory law and Constitution do not authorize the issuance of an execution as a preliminary to judicial proceedings. Executions are issued only after a judgment by a competent tribunal fixing the right of the parties in the manner provided by law.

Prior to the act of 1914 (Code Ch. 36-11), and in condemnation proceedings under the act of 1894 (Code Chs. 36-2—36-6), and more particularly with reference to the provisions of Code § 36-302, it was held by this court that, "In order to condemn

property for public purposes, it is necessary, preliminary to the commencement of the proceeding, for the condemnor to make an effort to agree with the owner of the property upon a price to be paid for the land." *City of Atlanta* v. *Austell*, 146 *Ga.* 456 (1) (91 S. E. 478). To the same effect see *City of Elberton* v. *Hobbs*, 121 *Ga.* 750 (49 S. E. 780); *Piedmont Cotton Mills* v. *Ga. Ry. &c. Co.*, 131 *Ga.* 129, 137 (4) (62 S. E. 52); *Barber* v. *Housing Authority of the City of Rome*, 189 *Ga.* 155, 161 (5 S. E. 2d 425); *Miller* v. *State Highway Dept.*, 200 *Ga.* 485 (37 S. E. 2d 365).

The act of 1914 (Code Ch. 36-11), as amended, provides that condemnation in rem is allowed in those cases where the condemnor "shall find or believe that the title of the apparent or presumptive owner of such property is defective, doubtful, incomplete or in controversy." Code (Ann.) § 36-1104. It has, therefore, been held that, in such condemnation proceedings in rem, "it is not necessary that the condemnation petition allege an unsuccessful effort to procure the land by contract or a failure to agree as to compensation." *Hoch* v. *Candler*, 190 *Ga.* 390 (2) (9 S. E. 2d 622). Such a ruling does not revoke, modify, or repeal the obvious legislative intent, or the constitutional mandate, that adequate compensation shall be "first paid" where private property is acquired for public purposes.

The cases of *Mims* v. *Macon &c. R. Co.*, 3 *Ga.* 333, *Young & Calhoun* v. *Harrison*, 6 *Ga.* 130, *Parham* v. *Justices of the Inferior Court of Decatur County*, 9 *Ga.* 341, and *Mayor &c. of Rome* v. *Perkins*, 30 *Ga.* 154, pertaining to the State's power of eminent domain, and similar cases, decided prior to the adoption of the Constitution of 1877, are not to be confused with decisions subsequent to that Constitution, although some of these cases may appear to be in line with what is here said. And decisions by this court prior to the act of 1894, now codified as Chapters 36-2 to 36-6, inclusive, such as *Oliver* v. *Union Point &c. R. Co.*, 83 *Ga.* 257 (9 S. E. 1086), and *Ga. So. & Fla. R. Co.* v. *Small*, 87 *Ga.* 355 (13 S. E. 515), should not be confused with decisions rendered subsequently to the act of 1894, and the act of 1914 (now codified as Chapter 36-11). Nor should decisions pertaining to the damaging of private property, where the damage claimed results solely from the public improvement made, and where no part of the property of the citizen is taken, be confused

with cases pertaining to the State's power of eminent domain. In this connection, see *City of Atlanta* v. *Green,* 67 *Ga.* 386; *Moore* v. *City of Atlanta,* 70 *Ga.* 611; *Streyer* v. *Ga. So. & Fla. R. Co.,* 90 *Ga.* 56 (15 S. E. 637) ; *Hurt* v. *City of Atlanta,* 100 *Ga.* 274 (28 S. E. 65) ; and *Austin* v. *Augusta Terminal Ry. Co.,* 108 *Ga.* 671 (34 S. E. 852, 47 L. R. A. 755).

In *City of Atlanta* v. *Green,* 67 *Ga.* 386, supra, it was said that, prior to the Constitution of 1877, municipal corporations were not liable for consequential damages resulting from the improvement of public streets; and that the damages which could be recovered must be the actual depreciation in the value of the property, which damages might be decreased by the actual benefits.

Counsel for the condemnee in the present case strongly urge that *Hurt* v. *City of Atlanta,* 100 *Ga.* 274, supra, is in point and controlling as to when a "taking" of private property occurs under the power of eminent domain. In their motion for rehearing, counsel assert that "this court, by a four-to-three majority, has no statutory or constitutional power to change or redefine the definition of 'taking' as contained in that full-bench decision."

In the statement of facts in the *Hurt* case, it is said that the structure "occupied all of the public thoroughfare upon which Mrs. Hurt's property abutted; but it did not encroach upon her land, and no part of the same was actually taken from her. It appeared from the evidence that the erection of the bridge rendered ingress to and egress from the building less convenient than formerly, and consequently impaired its utility and diminished its rental value; but it also appeared that, independently of all other causes, the market value of the property as a whole was considerably enhanced . . ." P. 275. It is clear from this statement of fact that the ruling in the *Green* case might have been applied and the case determined on the facts found by the court, to the effect that the actual value of the property was enhanced. The court in making the statement with reference to a "taking" under the constitutional provision was applying a "taking" to damages and not to eminent domain. This is clear from the decision wherein the court ruled: "Beyond doubt, an easement is, in a sense, 'property,' and there are, perhaps, cases where the appropriation of a mere easement,—such, for instance, as a railroad right-of-way,—might be held to be a taking of

property. Even then it would be a nice question as to whether such an appropriation should not more properly be termed a 'damaging' than a 'taking.' In either event, compensation would have to be paid, and that is the material thing in such a matter. In the present case, however, treating Mrs. Hurt's right of ingress and egress to her building as an easement, the destruction or impairment of the same cannot, we are satisfied, be regarded as a taking of her property within the meaning of the Constitution. 'There is a broad distinction between cases of this character and those in which possession of, and dominion over, private property is taken for public use.' *Moore* v. *City of Atlanta,* 70 *Ga.* 612." P. 280.

In a decision of this court rendered February 17 of this year, in *State Highway Dept.* v. *Strickland,* 213 *Ga.* 785, 788 (102 S. E. 2d 3), it is said: "In *Hurt* v. *City of Atlanta,* 100 *Ga.* 274 (28 S. E. 65), it was held that, even though the erection of a bridge in a public street might render less convenient the means of ingress and egress to an existing building on an abutting lot, such was not a taking of property within the meaning of the constitutional provision which requires the payment of just and adequate compensation before taking or damaging private property for public purposes." This construction of the *Hurt* case, being a full-bench decision, is binding on the members of this court and the parties in the present litigation.

The decision of this court in *Wilson* v. *State Highway Dept.,* 208 *Ga.* 510 (67 S. E. 2d 578), is not in conflict with the majority ruling in the present case. In the *Wilson* case, no constitutional question was made, or attempted to be made, it being there contended that, although the funds had been paid into the registry of the court, this was not sufficient, but that a tender had to be made to the condemnee. The decision of the Court of Appeals, after the transfer, in *Wilson* v. *State Highhway Dept.,* 85 *Ga. App.* 907 (70 S. E. 2d 535), clearly shows payment into the registry of the court, and that counsel undertook to make the further contention that, since a judgment of condemnation as authorized by Code § 36-1111 had been entered, the case was concluded and there was no right of appeal. Judge Sutton, for the Court of Appeals, pointed out the provisions of § 36-1113, which section

clearly provides for an appeal after the judgment of condemnation authorized by § 36-1111.

The ruling of the Court of Appeals in *Olliff* v. *Housing Authority of City of Statesboro*, 89 *Ga. App.* 43 (78 S. E. 2d 549), is not in conflict with the majority opinion in the present case, and is not authority for holding that an appeal will lie from the award of the assessors without tendering the amount of the award to the condemnee or paying it into the registry of the court. In the *Olliff* case, the funds were paid into the registry of the court before the appeal was entered, and the sole contention in that case was that there had to be a tender to the condemnee.

The case of *Georgia Ry. &c. Co.* v. *Mooney*, 147 *Ga.* 212 (93 S. E. 206), is not in conflict with the full-bench decision of this court in *Thomas* v. *Central of Ga. Ry. Co.*, 169 *Ga.* 269, supra. In the former case, as shown by the Code section cited, and by the record in that case, the Georgia Railway & Power Company was seeking only an easement or right-of-way for the erection of a power line. After the award of the assessors, the power company dismissed its appeal and did not enter upon the land of the condemnee. Since, under the ruling in the *Hurt* case, there was no damaging of the property, the condemnee was not entitled to collect the amount of the assessors' award.

The Constitutional Commission of 1943 and 1944, to write a new Constitution, eliminated from the draft submitted to the General Assembly the provision that adequate compensation shall be first paid, and substituted in lieu thereof the provision of the Federal Constitution. This change was made because the Commission did not want to require payment of the award to the condemnee or into the registry of the court as an essential of an appeal, and because the Commission did not want consequential damages fixed prior to a completion of the project for which the land was taken. See Minutes of Constitutional Commission, Vol. I, pp. 155, 159, 214, 216, and the draft of the proposed Constitution, Art. I, Sec. III, Par. I (Vol. II, p. 551). The General Assembly of Georgia, with knowledge of the action of the Constitutional Commission, declined to accept the Commission's version, and restored the former requirement that private property shall not be taken or damaged for public purposes without adequate compensation being first paid. The

action of the General Assembly, in changing this provision of the Constitution, and the action of the people in approving the Constitution as revised by the Assembly, are binding upon this court and upon the litigants in this case and all similar cases. The provision for just compensation to be first paid will not be avoided by members of this court who participated in writing the new Constitution of 1945 solely because they may have en- tertained views contrary to the wishes of the General Assembly and the people of this State.

For the foregoing reasons, in addition to those expressed in the opinion of Mr. Justice Candler, I concur in the judgment of reversal. I am authorized to say that Mr. Chief Justice Duckworth concurs with the views herein expressed.

WYATT, Presiding Justice, dissenting. 1. I can not agree with the opinion of the majority for the reasons hereinafter set out. In the instant case, if this court has jurisdiction, it is solely because the motion to dismiss the appeal either requires the construction of some provision of the Constitution of the State of Georgia or draws into question the constitutionality of some act or provision of some act of the General Assembly of Georgia. Code (Ann.) § 2-3704. The pertinent portions of the motion to dismiss the appeal, in which it is contended that a constitutional question within the jurisdiction of this court is made, reads as follows: "Movants contend and urge that if said Code §§ 36-508; 36-601; 36-602; 36-606; 36-1104; 36-1110; 36-1111; 36-1113; and 36-1115, and each of them be construed to permit to respondent or grant to respondent the right to appeal from the award of the assessors in this case to a jury in the superior court without requiring that the amount of the award either first to be tendered and paid to the condemnees, or paid into the registry of this court, when in fact respondents did file such an appeal, without first tendering or paying the amount of said award to condemnees, or into the registry of this court at the time of said appeal or within the ten days period provided for the making of said appeal, said Code sections, and each of them, are contrary to said provisions of the Constitution of the State of Georgia set forth in paragraphs 34 and 35 above." It is clear that this paragraph does not require the construction of any provision of the Constitution, nor does the amendment later filed in which it is set out that the con-

demnees have sustained present damage. See *Mayor &c. of Athens* v. *Gamma Delta Chapter House Corp.*, 208 *Ga.* 392 (67 S. E. 2d 111).

In the portion of the motion above quoted, it is also contended that—if the named Code sections are construed to permit the condemnors to file an appeal from the award of the assessors without first tendering such amount to the condemnees or paying same into the registry of the court—said Code sections are contrary to stated provisions of the Constitution of the State of Georgia. Is this sufficient to draw into question an act or some provision of an act of the General Assembly of Georgia? We find that it is not. It has been repeatedly held that, in order to draw into question the constitutionality of an act of the General Assembly so as to give this court jurisdiction, "at least three things must be shown: (1) the statute or the particular part or parts of the statute which the party would challenge must be stated or pointed out with fair precision; (2) the provision of the Constitution which it is claimed has been violated must be clearly designated; and (3) it must be shown wherein the statute, or some designated part of it, violates such constitutional provision." *Richmond Concrete Products Co.* v. *Ward*, 212 *Ga.* 773, 774 (95 S. E. 2d 677). Likewise, it has been held that "A criticism that 'sections 885 to 900 inclusive of the Criminal Code' of this State are violative of art. 6, sec. 4, par. 7 of the Constitution of Georgia, 'in that it confers upon the superior court the right to render judgment in cases' thereunder 'without the intervention of a jury', is too general to raise a question as to the constitutionality of any particular section of the Code, it appearing that many of the various sections included in the criticism have no reference to the subject of trial without a jury." *Rooks* v. *Tindall*, 138 *Ga.* 863 (2) (76 S. E. 378).

In the instant case, the condemnees contend that, if nine named Code sections are construed in a certain manner, they are violative of two named provisions of the Constitution of Georgia for stated reasons. In accordance with the authorities above cited, this is too general to draw into question the constitutionality of any one of the provisions named. Also, since it appears that a number of the named Code sections have no reference to the subject matter of an appeal from the award of the

assessors in a condemnation case, and are therefore certainly not unconstitutional for any of the reasons named, no question of the constitutionality of all the Code sections as a group is properly presented. *Dade County* v. *State of Georgia,* 201 *Ga.* 241 (39 S. E. 2d 473) ; *Flynn* v. *State,* 209 *Ga.* 519 (74 S. E. 2d 461) ; *Huiet* v. *Dayan,* 194 *Ga.* 250 (21 S. E. 2d 423) ; *Abel* v. *State,* 190 *Ga.* 651 (10 S. E. 2d 198) ; *Gormley* v. *Searcy,* 179 *Ga.* 389 (175 S. E. 913).

It is therefore apparent that no constitutional question such as to give this court jurisdiction in' this case is presented, and the case not being one otherwise within the jurisdiction of this court, should be transferred to the Court of Appeals.

While this court does have jurisdiction in cases involving "construction of the Constitution," we have that jurisdiction only as a court of review. In the instant case, there has been no construction of any provision of the Constitution by the trial court for the very good reason that nowhere in the record is any construction of the Constitution sought or prayed for. The plaintiff in error did seek the construction of certain purely statutory Code sections. The Court of Appeals can construe statutes.

This court has consistently said that a plain and unambiguous provision of the Constitution that needs no construction will not be construed by this court. The majority opinion relies upon *Crumb* v. *State,* 205 *Ga.* 547 (54 S. E. 2d 639), as a case requiring this court to entertain jurisdiction of the instant case. In that case, the question of jurisdiction was not raised, discussed, or expressly passed upon. The writer participated in that decision, and, being perfectly frank, states that the question of jurisdiction did not enter his mind. Since, in that case, the question of jurisdiction was not expressly passed upon, the case is nothing more than a physical precedent; and since there are numerous full-bench decisions older than the *Crumb* case in which the question of jurisdiction is expressly passed upon, holding that under the circumstances of the *Crumb* case, this court does not have jurisdiction, this case is not binding authority. See *Dade County* v. *State of Georgia,* 201 *Ga.* 241, supra, and the numerous authorities cited therein.

The majority opinion, citing authorities in which it is con-

tended that the language is obiter, to the effect that the constitutional provision under consideration means an actual, physical taking of the property, then says: "We think that the meaning of the aforementioned provision of our Constitution, if not already doubtful under its own terms, has been rendered doubtful thereby, and that jurisdiction of the present case should be entertained by this court for the purpose of determining what our constitutional provision requiring payment of just and adequate compensation to the owner before private property can be taken for a public use actually means." There is not one word in any of the authorities cited that to my mind makes this provision of our Constitution doubtful. The authorities all say that taking means actual, physical taking. Even if this language is obiter—and I do not think that it is—that fact would not make the meaning of the term doubtful. I do not think that the word "taken" as used in the constitutional provision under consideration is doubtful or needs any construction. Of course, this court will not entertain a case for the purpose of construing a provision of the Constitution that is not doubtful or needs no construction. I simply can not agree that a person in full and complete possession of his property, when the condemnor has done nothing except follow the proceeding provided for by law to ascertain the value of the property, has had his property taken from him.

2. Even if this court had jurisdiction of this case, I can not agree with the majority opinion on the construction of the constitutional provision in question. Under the previous rulings of this court, it is my opinion that there has been no "taking" of the property in the instant case. The majority opinion—after pointing out that "condemnor insists that it means only an actual physical taking in toto of the owner's land for a public use," and that "condemnees contend that it not only means an actual physical taking of the owner's land, but also means the taking of any substantial right of property which an owner has in his land"—then states: "We must confess that obiter language can be found in some of the decisions of this court which does support both of them." The decisions of this court are then referred to in which the language used holds that, under the facts of the instant case, there has been no taking.

It is contended that the cases on this question are obiter dicta.

It is interesting to note that no decision of this court is referred to in which there is any language supporting the construction placed upon the word "taken" by the majority opinion—obiter or otherwise. This court in *Hurt* v. *City of Atlanta*, 100 *Ga.* 274, 280, said: "The 'taking' referred to in the constitutional paragraph under consideration means a physical, tangible appropriation of the property of another." In that case the identical constitutional provision here under consideration was construed. There, as here, there has been no actual, physical taking of the property. There, as here, is was simply contended that there had been a substantial interference with the right of the property owner to enjoy his property. There, the court held that there had been no "taking" of the property, and here, in my opinion, we should hold the same thing. I do not see how it can justifiably be contended that this language is obiter. I do not consider this language to be obiter in any sense of the word.

What has been said about *Hurt* v. *City of Atlanta*, 100 *Ga.* 274, supra, may be said about other decisions referred to in the majority opinion as being obiter. I want to emphasize that, in the instant case, the property owner is in complete possession and use of his property. The condemnor has not taken possession of any of the property and has not in any way interfered with possession by the owner. This court in *Georgia Ry. &c. Co.* v. *Mooney*, 147 *Ga.* 212 (1) (93 S. E. 206), said: "Where proceedings are instituted by a power company against a landowner to condemn property under the Civil Code, § 5206 et seq., and an appeal is taken from the award of the assessors, the company, not having taken possession of the land, may dismiss the condemnation proceedings pending the appeal." If the condemnor can "dismiss the condemnation proceedings pending the appeal," certain it is that there has been no taking of the property.

I fail to see what has been accomplished by the majority opinion. Regardless of any construction placed upon the constitutional provision in question, the General Assembly has by statute provided a method for appeal from the award of assessors in condemnation proceedings as set out in the Code sections previously cited in this dissenting opinion. No requirement of payment of the award as a condition precedent to the filing of an appeal is there provided for. These Code sections are, of

course, constitutional until and unless they have been held otherwise by this court. No proper attack is made on these Code sections, and the majority opinion so holds. It seems to me that the effect of the majority opinion is to add a new Code section to our statute law, and this court has no legislative authority. The condemnor in this case has complied with all statutory requirements concerning this appeal; and since this has been done, I do not believe that the appeal should be dismissed.

ALMAND, Justice, dissenting. I concur in the dissenting opinion of Presiding Justice Wyatt and only wish to add a few additional reasons for my dissent. The majority opinion states that a decision of the case depends upon the meaning of the word "taking" as contained in par. 1, sec. 3, art. 1 of the Constitution of Georgia (Code, Ann., § 2-301); and that the contention of the condemnor is that it means the actual physical taking of the land, and that that of the condemnee is that it means the taking of any property which an owner has in his land, and that "obiter language can be found in some of the decisions of this court which does support both of them." But no case from this court (and I have found none) is cited in support of the condemnee's contention. This court in *Hurt* v. *City of Atlanta*, 100 *Ga.* 274, 280 (28 S. E. 65), a full-bench decision, defined the word "taking" as used in this constitutional provision as "a physical, tangible appropriation of the property of another." This ruling has never been questioned or overruled. The court today says that "as the word 'taken' is construed in many other jurisdictions, a *taking* of property for which compensation must be first paid *does not require an actual physical taking*, but may consist in an interference with the rights of ownership, use and enjoyment, or any other right incident to property." (Italics supplied.) In support of this construction of the term "taking", Corpus Juris Secundum and an Ohio case are cited. Stare decisis and a binding precedent of this court must therefore yield to the construction placed upon the word "taking" by many other jurisdictions. In *Collins* v. *Mills*, 198 *Ga.* 18, 22 (30 S. E. 2d 866, 4 A. L. R. 2d 745), this court in a full-bench decision said: "A provision of the Constitution is to be construed in the sense in which it was understood by the framers and the people at the time of its adoption. Accordingly, the amendment of 1912 means now precisely what it

meant at that time." The provision of the Constitution of 1945 which provides that private property shall not be taken for public purposes without just and adequate compensation being first paid is the same as that contained in the Constitution of 1877 (art. 1, sec. 3, par. 1). Chief Justice Simmons and Justice Little were members of this court at the time the case of *Hurt* v. *City of Atlanta*, 100 *Ga.* 274, supra, was decided. Both were also members of the Constitutional Convention of 1877 which prepared that Constitution. Certainly they and the other members of the court in 1896 were in a better position to know the meaning of the word "taking" than are we, the present members of the court three generations removed from the scene of the Convention of 1877. If the word "taking" is defined as meaning one thing in 1896 (*Hurt* v. *City of Atlanta*), and a different thing in 1958, and a construction of its meaning is to be determined by the age in which we are living, this court can, as constituted ten years from now, give the word its meaning in the age of space, rather than its meaning in the age of atomic energy or in the horse and buggy era.

The majority opinion also overlooks the case of *Ga. So. & Fla. R. Co.* v. *Small*, 87 *Ga.* 355 (13 S. E. 515), which holds that in a condemnation case, the time of the taking of private property for public use is when the condemnor tenders the amount of damages awarded by the assessors. See also *Gate City Terminal Co.* v. *Thrower*, 136 *Ga.* 456 (71 S. E. 903).

MOBLEY, Justice, dissenting. I concur in the dissenting opinions of Presiding Justice Wyatt and Justice Almand.